1
2
3
4
5
6
7
8

Christopher Sproul (Cal. Bar No. 126398)
Stuart Wilcox (Cal. Bar No. 327726)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: wilcox@enviroadvocates.com

Attorneys for Plaintiff
ECOLOGICAL RIGHTS FOUNDATION

9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20

ECOLOGICAL RIGHTS FOUNDATION, a
non-profit corporation,

                Plaintiff,

        v.

UNITED STATES ARMY CORPS OF
ENGINEERS; NATIONAL MARINE
FISHERIES SERVICE,

                Defendants.

Civil Case No. 23-cv-5309

**MOTION FOR ATTORNEYS' FEES
AND COSTS**

21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2   I.   Introduction ..................................................................................................1

3   II.  Factual Background...........................................................................................1

4   III. Legal Standard ...............................................................................................4

5   IV.  Argument ......................................................................................................5

6        a. EcoRights is eligible for an award of attorneys' fees and costs ........................6

7        b. EcoRights is entitled to an award of attorneys' fees and costs.........................11

8             i. EcoRights' lawsuit provided public benefit ........................................12

9             ii. EcoRights has no commercial interest in the records at issue............................13

10            iii. Defendants' failure to comply with FOIA was unreasonable ..........................13

11       c. EcoRights' requested award of fees and costs is reasonable under the

12       circumstances ........................................................................................15

13            i. EcoRights' hourly rates in this matter are reasonable ........................................16

14            ii. EcoRights' time incurred in this matter was reasonable ..................................19

15            iii. EcoRights' costs in this matter are reasonable ..................................24

16   V. Conclusion ....................................................................................................25

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3 **Cases**

4 *ACLU Immigrants' Right Projects v. U.S. Immigration & Customs Enf't,*

5      No. 16-6066, 2018 U.S. Dist. LEXIS 9037 (N.D. Cal. Jan. 19, 2018)..............................22

6 *A.D. v. State Highway Patrol,*

7      No. 07-5483, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal. Nov. 27, 2013) ........................23

8 *Blum v. Stenson,*

9      465 U.S. 886 (1984).......................................................................................................17

10 *Camacho v. Bridgeport Fin, Inc.,*

11      523 F.3d 973 (9th Cir. 2008) .............................................................................16, 17, 23

12 *Cazalas v. DOJ,*

13      709 F.2d 1051 (5th Cir. 1983) .........................................................................................5

14 *Church of Scientology v. USPS,*

15      700 F.2d 486 (9th Cir. 1983) ...............................................................................5, 12, 13

16 *Citizens for Responsibility & Ethics in Wash. v. FEC,*

17      711 F.3d 180 (D.C. Cir. 2013) ...............................................................................6, 9, 10

18 *Copeland v. Marshall,*

19      641 F.2d 880 (D.C. Cir. 1980) ......................................................................................15

20 *Cuneo v. Rumsfeld,*

21      553 F.2d 1360 (D.C. Cir. 1977) ....................................................................................12

22 *Davy v. CIA,*

23      456 F.3d 162 (D.C. Cir. 2006) ........................................................................................7

24 *Davy v. CIA,*

25      550 F.3d 1155 (D.C. Cir. 2008).......................................................................11, 12, 13, 15

26 *Ecological Rights Foundation v. Hot Line Construction, Inc.,*

27      No. 20-1108, 2024 U.S. Dist. LEXIS 129282 (C.D. Cal. July 19, 2024).........................18

28

*Edmonds v. FBI*,

    417 F.3d 1319 (D.C. Cir. 2005) ..................................................................11

*Estiverne v. Esernio-Jenssen*,

    908 F. Supp. 2d 305 (E.D.N.Y. 2012) ........................................................23

*Farrar v. Hobby*,

    506 U.S. 103 (1992)......................................................................................11

*First Amend. Coal. v. DOJ*,

    878 F.3d 1119 (9th Cir. 2017) ............................................................. *passim*

*Fischer v. SJB-P.D. Inc.*,

    214 F.3d 1115 (9th Cir. 2000) ....................................................................15

*Fox v. Vice*,

    563 U.S. 826 (2011)........................................................................................5

*Gates v. Deukmejian*,

    987 F.2d 1392 (9th Cir. 1992) ....................................................................16

*Golden Gate Audobon Soc'y v. Corps*,

    732 F. Supp. 1014 (N.D. Cal. 1989) ...........................................................23

*Grove v. Wells Fargo Fin. Cal., Inc.*,

    606 F.3d 577 (9th Cir. 2010) ......................................................................25

*Hajro v. U.S. Citizenship and Immigration Servs.*,

    900 F. Supp. 2d 1034 (N.D. Cal. 2012) ........................................................5

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983).................................................................15, 16, 17, 20

*Hiken v. Dep't of Defense*,

    836 F.3d 1037 (9th Cir. 2016) ......................................................5, 11, 15, 16

*Hirsch v. Compton Unified Sch. Dist.*,

    No. 12-1269, 2013 U.S. Dist. LEXIS 64556 (C.D. Cal. May 3, 2013) ............................24

*Hum. Rts. Def. Ctr. v. DOJ*,

    No. 20-674, 2024 U.S. Dist. LEXIS 101948 (W.D. Wash. June 7, 2024) ...................7, 10

*Inland Empire Waterkeeper v. Corona Clay Co.*,

    No. 18-333, 2024 U.S. Dist. Lexis 10550 (C.D. Cal. Jan. 19, 2024)................................18

*Intamin, Ltd. v. Magnetar Technologies Corp.*,

    No. 04-511, 2009 U.S. Dist. LEXIS 123604 (C.D. Cal. Dec. 28, 2009) ..........................24

*Judicial Watch v. DOJ*,

    878 F. Supp. 2d 225 (D.D.C. 2012) ...................................................................................13

*Local 598 v. U.S. Army Corps of Eng'rs*,

    841 F.2d 1459 (9th Cir. 1988) ..........................................................................................13

*Los Angeles Waterkeeper v. American Reclamation*,

    No. 21-1140, Dkts. 45, 66 (C.D. Cal. April 15, 2022)......................................................18

*Marbled Murrelet v. Pac. Lumber Co.*,

    163 F.R.D. 308 (N.D. Cal. 1995).......................................................................................25

*Meguerditchian v. Aetna Life Ins. Co.*,

    No. 12-10999, 2014 U.S. Dist. LEXIS 111635 (C.D. Cal. Aug. 12, 2014)......................18

*Miller v. Holzmann*,

    575 F. Supp. 2d 2 (D.D.C. 2008).........................................................................21, 22, 23

*Missouri v. Jenkins*,

    491 U.S. 274 (1989)....................................................................................................19, 24

*Moore v. Jas. H. Matthews & Co.*,

    682 F.2d 830 (9th Cir. 1982) ............................................................................................20

*Moreno v. City of Sacramento*,

    534 F.3d 1106 (9th Cir. 2008) ...........................................................................................20

*Nat'l Ass'n of Concerned Veterans v. Se'cy of Def.*,

    675 F.2d 1319 (D.C. Cir. 1982) ........................................................................................16

*Negley v. FBI*,

    818 F. Supp. 2d 69 (D.D.C. 2011) ...................................................................15

*Perfect 10 v. Giganews*,

    No. 11-7098, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015)....................17, 25

*Pierce v. County of Orange*,

    905 F. Supp.2d 1017 (C.D. Cal. 2012) ...........................................................24

*Pinson v. DOJ*,

    245 F. Supp. 3d 225 (D.D.C. 2017) ................................................................6

*Piper v. DOJ*,

    339 F. Supp. 2d 13 (D.D.C. 2004) .................................................................15

*Poulsen v. Dep't of Defense*,

    994 F.3d 1046 (9th Cir. 2021) ..................................................................4, 7

*Prison Legal News v. Schwarzenneger*,

    608 F.3d 446 (9th Cir. 2010) .....................................................................17

*Protect the Public's Tr. v. IRS*,

    No. 23-340, 2024 U.S. Dist. LEXIS 27007 (D.D.C. Feb. 16, 2024) .................................11

*Pub.Resource.org v. IRS*,

    78 F. Supp. 3d 1262 (N.D. Cal. 2015) .............................................................14

*Public.Resource.org v. IRS*,

    No. 13-2789, 2015 U.S. Dist. LEXIS 175943 (N.D. Cal. Nov. 20, 2015) ...........................5

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*,

    574 F.3d 1054 (9th Cir. 2009) ...................................................................11

*S.F. Baykeeper v. City of Sunnyvale*,

    No. 20-824, 2024 U.S. Dist. LEXIS 167582 (N.D. Cal. Sep. 17, 2024) ...........................19

*Sorenson v. Mink*,

    239 F.3d 1140 (9th Cir. 2001) ...................................................................16

*Stonebrae, L.P. v. Toll Bros.*,

   No. 08-221, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. Apr. 7, 2011) ...............................17

*Sw. Ctr. for Biological Diversity v. Bartel*,

   No. 98-2234, 2007 U.S. Dist. LEXIS 64232 (S.D. Cal. Aug. 30, 2007) ...........................16

*Tenn. Valley Auth. v. Hill*,

   437 U.S. 153 (1978)...........................................................................................................12

*TPS, Inc. v. DOD*,

   330 F.3d 1191 (9th Cir. 2003) ...........................................................................................14

*Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*,

   460 F.3d 1253 (9th Cir. 2006) ...........................................................................................24

*Wash. Post Co. v. Dep't of Agric.*,

   934 F. Supp. 31 (D.D.C. 1996) ..........................................................................................12

*Welch v. Metro. Life Ins. Co.*,

   480 F.3d 942 (9th Cir. 2007) .............................................................................................19

*Williams v. Dep't of Army*,

   No. 92-20088, 1993 U.S. Dist. LEXIS 15336 (N.D. Cal. Sep. 13, 1993) .........................11

*Wishtoyo Found. v. United Water Cons. Dist.*,

   No. 16-3869, 2019 U.S. Dist. LEXIS 39927 (C.D. Cal. Mar. 2, 2019)......................19, 24


**Statutes**

5 U.S.C. § 552(a)(3)(A) ....................................................................................................9, 10, 14

5 U.S.C. § 552(a)(3)(B) ........................................................................................................8, 14

5 U.S.C. § 552(a)(3)(C) .............................................................................................................14

5 U.S.C. § 552(a)(4)(E)................................................................................................................4

5 U.S.C. § 552(a)(4)(E)(ii)..............................................................................................4, 7, 11

5 U.S.C. § 552(a)(6)(A)(i) ...............................................................................................8, 10, 13

5 U.S.C. § 552(a)(6)(B)(i).........................................................................................................13

5 U.S.C. § 552(a)(7)...................................................................................................6

5 U.S.C. § 552(a)(7)(B)(ii) .......................................................................................15

5 U.S.C. § 552(a)(8)(A)(i) ........................................................................................10


**Other Authorities**

Fed. R. Civ. P. 4(i) .....................................................................................................21

House Comm. On Gov't Operations & Senate Comm. On the Judiciary, 94th Cong., Freedom of Information Act and Amendments of 1974 (P.L. 93-502).................................................5

MARCH 14, 1974 HOUSE DEBATE ON H.R. 12471 AT 29, *reprinted in* COMM. ON GOV'T OPERATIONS, 94TH CONG., FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (P.L. 93-502), 1975, at 264 ..................................................................................17

MAY 30, 1974 Senate Debate on S. 2543 at 16, *reprinted in* COMM. ON GOV'T OPERATIONS, 94TH CONG., FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (P.L. 93-502), 1975, at 297...................................................................................................17

S. Rep. No. 93-854, 93rd Cong. 2d Sess. 19.........................................................12, 18

## I. Introduction

Through this Freedom of Information Act ("FOIA") citizen suit, Plaintiff Ecological Rights Foundation ("EcoRights") sought records from Defendants U.S. Army Corps of Engineers ("the Corps") and the National Marine Fisheries Service ("NMFS") regarding the Corps' ongoing, long-term attempts to shirk its Endangered Species Act ("ESA") duties to protect ESA-listed fish species in the Yuba River. To further look into these issues, on or about May 8, 2023, EcoRights submitted two FOIA requests directly to the Corps and two FOIA requests to NMFS, where NMFS referred certain records to the Corps for review and production (collectively the "FOIA Requests"). Both Defendants violated FOIA through their failures to timely issue valid final determinations, produce all non-exempt records, provide current estimated completion dates, complete FOIA-compliant searches, and produce the records in the requested format. EcoRights' lawsuit was necessary to secure Defendants' compliance with FOIA, and EcoRights' request that it be paid **$125,619.82** in attorneys' fees and costs is warranted and reasonable based on the facts of this case.[1]

## II. Factual Background

EcoRights submitted the FOIA Requests on or about May 8, 2023. The FOIA Requests seek records related to the Corps' operation and maintenance of two Corp dams on the Yuba River in California (Daguerre Point and Englebright) and certain hydropower facilities (Narrows 1 and Narrows 2) and diversions (Brophy and Cordua) related thereto. Declaration of Stuart Wilcox ("Wilcox Dec.") Ex. 2. On July 30, 2024, NMFS released the most recent in a long string of ESA consultation documents addressing harm caused by operations and maintenance of existing fish passage facilities at Daguerre Point Dam on ESA-listed species and their designated critical habitat. Wilcox Dec. Ex. 3. In that document, NMFS concluded that implementation of the proposed action, essentially continuation of long-term actions at Daguerre Point Dam, is likely to jeopardize the continued existence of ESA-listed Central Valley spring-run Chinook salmon, California Central Valley steelhead, and Southern Resident

---

[1] EcoRights will adjust this amount in its reply brief to account for all time incurred after January 21, 2025, the last date reflected in the timesheet EcoRights used to calculated the above figure.

killer whale and adversely modify designated ESA critical habitat for Central Valley spring-run Chinook salmon, California Central Valley steelhead, and Southern Resident killer whale. *Id.* NMFS's conclusion is striking given the exceeding rarity of "jeopardy" opinions in the ESA context. Indeed, a study found that from 2008-2015, of 6,829 formal ESA consultations, *only 2* resulted in a finding of jeopardy. *See id.* Ex. 4. This is clear indication of the high level of threat to ESA-listed species posed by the Corps' dams and related structures.

The requested records are part of a larger campaign whereby environmental organizations, including EcoRights, have sought for years to force the Corps through citizen suit action and/or advocacy to change its management of these structures and take other actions necessary to protect these, and other, imperiled species. Indeed, these records were sought for various advocacy reasons, including further litigation. Thus, prompt, complete production in usable format was, and is, of the utmost importance.

However, neither the Corps nor NMFS had made a valid final determination on any of the FOIA Requests by the final determination deadline, which was no later than June 14, 2023. Dkt. 1 ¶¶ 40-45. Three weeks later, on July 7, 2023, NMFS, in documents purporting to be final determinations, informed EcoRights that it was referring 63 records responsive to the FOIA Requests that EcoRights had submitted to NMFS to the Corps for final determination and production. *Id.* ¶ 53.[2] Over three months later, after conferring with Defendants, and still with no final determination, updated estimated completion date, or even production of a single record from the Corps (either in response to the FOIA Requests sent to the Corps or regarding the records referred to the Corps by NMFS), EcoRights filed the present lawsuit on or about October 18, 2023. *See id.* ¶¶ 53-61; Wilcox Dec. ¶ 17.

After EcoRights filed the lawsuit, the Corps finally began producing the long overdue records. On December 30, 2023, over 6 months after the final determination deadline and over two months after EcoRights filed this lawsuit, the Corps made a purported final determination, producing records

---

[2] On August 22, 2023, NMFS informed EcoRights that it was referring one more record to the Corps for determination and production, bringing the total referred records to 64.

covering approximately 3,558 pages, all in PDF format and many in large files combining many individual records, and referred 45 records to NMFS for determination and production. Wilcox Dec. ¶ 18; Dkt. 14 at 2. The Corps amended this "final determination" on January 8, 2024 after EcoRights identified certain shortcomings in the final determination document itself. Wilcox Dec. ¶ 19. NMFS subsequently referred some of the records referred to it back to the Corps and two other records to the Federal Energy Regulatory Commission ("FERC"). Dkt. 17 at 2. After NMFS, the Corps, and FERC produced these various referred records in mid-late January 2024, Defendants took the position that all responsive records had been produced. *Id.*

On February 8, 2024, EcoRights provided Defendants with a letter laying out various shortcomings with the Defendants' record search and production. Wilcox Dec. Ex. 5. This letter requested an index of the record withholdings Defendants made; that Defendants produce certain records in their native format, as had been explicitly requested in the FOIA Requests; that Defendants produce records, including many listed attachments in produced emails, that were referenced on the face of dozens of records in the production, which locations EcoRights cited in the letter; and that Defendants confirm whether certain records that appeared to contain redactions were intentionally redacted. *Id.* On March 1, 2024, Defendants produced an index of their withholdings in the already-produced records and agreed to further production of the missing records identified by EcoRights on February 8, 2024. *Id.* Ex. 6. On March 13, 2024 Defendants produced 44 additional records that EcoRights had identified as being missing, covering over 1,100 pages of previously unreleased material (the 13 Excel spreadsheets in this production are not included in this page total). *Id.* ¶ 23. On April 3, 2024, Defendants produced 5 more previously-withheld records (145 pages of records and an Excel spreadsheet). *Id.* ¶ 24. After further conferral, on May 1, 2024, Defendants refused to produce native format files for the records it had previously produced. *Id.* ¶ 25. On May 9, 2024, EcoRights again stated it basis for requiring production in native format, including correcting various incorrect assertions from the May 1, 2024 letter with case law support, to encourage Defendants to correct their form or format violations. *Id.* ¶ 26. EcoRights also repeatedly raised this issue with opposing counsel over the following weeks and provided Defendants' new counsel with transcript support from a previous case management conference where the parties and

the Court discussed this issue as further support for native format production. Wilcox Dec. Ex. 9. On June 10, 2024, over four months after EcoRights raised this issue, Defendants finally reversed their position and agreed to re-produce in native format: (1) all records produced by the Corps that had not yet been produced in native format (except those few records that had been partially redacted) and (2) all records referred to NMFS from the Corps. Wilcox Dec. ¶ 28. Defendants also agreed to produce an index of metadata for all records referred to the Corps from NMFS, which metadata was EcoRights' primary purpose for requesting native records in this lawsuit. *Id.* The production of these native format records and associated metadata suitably resolved the last remaining substantive dispute in this lawsuit.

On June 18, 2024, EcoRights provided Defendants with its detailed time records and a settlement offer attempting to resolve EcoRights' claim for attorneys' fees and costs. *Id.* ¶ 29. After several attempts at negotiation, the parties were unable to resolve EcoRights' attorneys' fees and costs and were directed to mediation, which also was not successful in resolving this dispute. *Id.*; Dkt. 46. The present Motion follows.

Through this lawsuit, EcoRights served the public interest in open government, and the excellent results achieved in this litigation entitle EcoRights to a fully compensatory attorney fee and cost award for litigating this action (reduced by time already reduced in the exercise of billing judgment). EcoRights' reasonable attorneys' fees and costs for which it seeks recovery in this matter, as of January 21, 2025, are $125,619.82.

**III.    Legal Standard**

FOIA provides for assessment of reasonable attorney fees and other litigation costs where the plaintiff has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Under FOIA, a plaintiff has "substantially prevailed" if there is *either* a "voluntary or unilateral change in position" by the agency *or* a judicial order in plaintiff's favor. *See, e.g.*, 5 U.S.C. § 552(a)(4)(E)(ii); *Poulsen v. Dep't of Defense*, 994 F.3d 1046, 1051-52 (9th Cir. 2021) (citations omitted) (noting that changes to FOIA adding "voluntary or unilateral change in position" lowered the fee recovery threshold). After considering whether the plaintiff "substantially prevailed," referred to as "eligibility" in the case law, courts balance four factors to determine if the plaintiff is "entitled" to attorneys' fees and costs. *See, e.g., Poulsen*, 994

F.3d at 1050 (citations omitted). Lastly, the court proceeds with its normal fee analysis. "The 'customary method' for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by 'reasonable hourly rate.'" *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). There is a "strong presumption" that the lodestar figure represents a reasonable award. *Id.* "[T]rial courts need not, and indeed should not, become green-eyeshade accountants" in examining fee requests since "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

FOIA's legislative history underscores that "a crucial means of implementing [FOIA's open government aims] is a liberal attorneys fee provision." *Cazalas v. DOJ*, 709 F.2d 1051, 1057 (5th Cir. 1983); *Hajro v. U.S. Citizenship and Immigration Servs.*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012), *rev'd in part on other grounds*, 807 F.3d 1054 (9th Cir. 2015) (quoting legislative history). As the Senate Report that accompanied FOIA's 1974 amendments explained:

> Generally, if a complainant has been successful in proving that a government official has wrongfully withheld information, he has acted as a private attorney general in vindicating an important public policy. In such cases it would seem tantamount to a penalty to require the wronged citizen to pay his attorneys' fee to make the government comply with the law.

House Comm. On Gov't Operations & Senate Comm. On the Judiciary, 94th Cong., Freedom of Information Act and Amendments of 1974 (P.L. 93-502) Source Book: Legislative History, Texts, and Other Documents (Joint Comm. Print 1975), available at http://perma.cc/X2XW-9B4K, at 171. Furthermore, where, as here, the plaintiff "is indigent or a nonprofit public interest group, an award of attorneys' fees furthers the FOIA policy of expanding access to government information." *Public.Resource.org v. IRS*, No. 13-2789, 2015 U.S. Dist. LEXIS 175943 at *11 (N.D. Cal. Nov. 20, 2015); *Church of Scientology v. USPS*, 700 F.2d 486, 494 (9th Cir. 1983).

## IV.    Argument

EcoRights should be awarded the reasonable attorneys' fees and costs that it here requests for vindicating its rights in this matter. As the Ninth Circuit has admonished: "The fees provision has as its fundamental purpose the facilitation of citizen access to the courts to vindicate the public's statutory

1    rights, and a grudging application of the attorney fees provision would be clearly contrary to

2    congressional intent." *First Amend. Coal. v. DOJ*, 878 F.3d 1119, 1126 (9th Cir. 2017) (cleaned up,

3    citations omitted). This assumption in favor of fully compensatory attorney fee and cost awards carries

4    through all of the considerations discussed below.

5            **a.  EcoRights is eligible for an award of attorneys' fees and costs.**

6            EcoRights is eligible for an award of attorneys' fees and costs because it secured a Court order in

7    its favor, an enforceable written agreement, and changes in agency positions in its favor, any one of

8    which is suitable on its own to render a party prevailing under FOIA.

9            As discussed above, prior to entering into this litigation, the Corps had neither made any final

10   determination nor produced a single record in response to EcoRights' FOIA Requests, including for

11   records referred to it by NMFS. Though NMFS had produced some records and had made what it

12   purported to be final determinations, it had not produced all records and those "determinations" were

13   facially insufficient because they did not "determine and communicate the scope of the documents

14   [NMFS] intends to produce and withhold, and the reasons for withholding any documents." *Citizens for*

15   *Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (reciting minimum

16   requirements for a valid final determination). Referral does not absolve the referring agency of its duty

17   to comply with FOIA for all records that it found in its search of its files. *See, e.g., Pinson v. DOJ*, 245

18   F. Supp. 3d 225, 244 (D.D.C. 2017) ("Indeed, 'the agency who received the FOIA request … is the

19   agency ultimately responsible for responding to the request,' and thus 'the agency is not absolved of its

20   obligations under FOIA when it refers the documents elsewhere.'") (citation omitted). Furthermore,

21   Defendants had not carried out adequate searches for records or provided EcoRights with updated

22   estimated completion dates, as required by FOIA. 5 U.S.C. § 552(a)(7). In sum, despite attempting

23   conferral with Defendants, Defendants had not searched for and produced all requested records or told

24   EcoRights what Defendants would produce, what they would withhold, and when, which violates

25   numerous provisions of FOIA. This lawsuit remedied these failures, rendering EcoRights eligible for an

26   award of attorneys' fees and costs.

27           As stated above, a FOIA requester is eligible for an award of attorneys' and costs where it has

"obtained relief through … a judicial order, or an enforceable written agreement or consent decree [or] a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). While either of these grounds are sufficient on their own to render a FOIA requester eligible for an award of attorneys' fees and costs, EcoRights is eligible on both grounds.

EcoRights "obtained relief through … a judicial order, or an enforceable written agreement" at least two times in this litigation. First, on December 22, 2023, the Parties filed a stipulation requiring Defendants to make at least a partial production of records by December 31, 2023. Dkt. 10. Defendants produced over 3,500 pages of documents on December 30, 2023, not including certain email files and spreadsheets also produced that day, subject to this stipulation. Wilcox Dec. ¶ 18. Second, in a February 23, 2024 Minute Order, the Court ordered a March 1, 2024 deadline for Defendants to provide EcoRights with a report regarding the status of remaining disputes and a production of responsive records. Dkt. 20.  These production requirements were an "enforceable written agreement" and "a judicial order" respectively, which are adequate to render EcoRights eligible for an award of attorneys' fees and costs. *See, e.g., Davy v. CIA*, 456 F.3d 162, 165-66 (D.C. Cir. 2006) (production schedule suitable for eligibility).

EcoRights also "substantially caused the government to release the requested documents before final judgment." *Poulsen*, 994 F.3d at 1051 (citation omitted). In assessing causation, the Court considers "(1) when the documents were released, (2) what actually triggered the documents' release, and (3) whether the plaintiff was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1128 (cleaned up, citation omitted).

As a preliminary matter, the Corps only began producing records after the lawsuit was filed and NMFS also produced many records after filing. This supports finding that the lawsuit was necessary. *See, e.g., Hum. Rts. Def. Ctr. v. DOJ*, No. 20-674, 2024 U.S. Dist. LEXIS 101948, at *9 (W.D. Wash. June 7, 2024) (relying in part on fact that every document was released after lawsuit was filed to find eligibility). However, EcoRights does not rely on timing of production alone. As discussed above, EcoRights succeeded in negotiation of multiple changes in position throughout this lawsuit. For example, the FOIA Requests explicitly asked for the responsive records in native format. Wilcox Dec. ¶

15 (quoting the FOIA Requests). When Defendants failed to produce those records in native format, EcoRights engaged in extensive negotiations attempting to secure their re-production in the requested format. *Id.* ¶¶ 21, 25-28, Exs. 5, 9. Defendants repeatedly refused to fix this problem and provided argument, case law, and legislative history they argued supported their right not to do so. *Id.* EcoRights refuted these contentions, but, having apparently reached an impasse, on May 9, 2024 EcoRights said that, if Defendants refuse to correct the form or format violations, "we are prepared to litigate this issue." *Id.* ¶ 26. Finally, on June 10, 2024, after over four months of EcoRights negotiating in an attempt to receive these records in the requested native format with their metadata, Defendants finally changed their position and agreed to fix this problem, actually re-producing the records in July 2024, over 14 months after EcoRights submitted the FOIA Requests. *Id.* ¶ 28. If it were not for EcoRights' "dogged determination," Defendants would have continued to refuse to produce this information and the files in this format, greatly hampering their usefulness to EcoRights. *See First Amend. Coal.*, 878 F.3d at 1129-30. This is plainly more than mere *post hoc, ergo propter hoc* and is sufficient to meet the first two factors in the *First Amend. Coal.*, 878 F.3d at 1128, analysis.

Defendants' failure to produce these records in native format in the first instance, and to continue to refuse to do so for months after that failure was challenged, deprived EcoRights of the documents well after EcoRights was entitled to receive them. *See First Amend. Coal.*, 878 F.3d at 1128, 1130. The FOIA Requests all *explicitly* requested that Defendants produce records "in the original computer file format the documents were created in and are presently stored in … rendering the documents usable in standard legal profession document processing software." Wilcox Dec. ¶ 15. In support, the FOIA Requests all quoted 5 U.S.C. § 552(a)(3)(B): "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." *Id.* EcoRights raised this violation of FOIA with Defendants in its February 8, 2024 conferral letter, and many times afterward in conferral, but Defendants steadfastly refused to fix this violation until June 10, 2024, not actually providing the records until July 2024. *Id.* ¶¶ 21, 25-28, Exs. 5, 9. EcoRights was entitled to production of these native format records within a few weeks of the 20-business-day final determination deadline at the latest. *See* 5 U.S.C. § 552(a)(6)(A)(i) (20-business-day determination

deadline); 5 U.S.C. § 552(a)(3)(A) (agency "shall make the records promptly available to any person.");

*CREW v. FEC*, 711 F.3d at 188 ("FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years."). Defendants of course failed to meet that duty. However, even beyond that, Defendants' unreasonable decision to fight against fixing this plain error in their production deprived EcoRights of the requested information for additional months above and beyond Defendants' already unacceptable failure to comply with FOIA's deadlines. *See First Amend. Coal.*, 878 F.3d at 1130. EcoRights was plainly "entitled to the documents at an earlier time," and the third *First Amend. Coal.*, 878 F.3d at 1128, factor thus also weighs in EcoRights' favor.

In addition to correcting the form or format violations that EcoRights identified, EcoRights also successfully caused Defendants to search for and produce additional records after they issued their final determinations and purported to have produced all responsive records. As previously stated, on July 7, 2023 and December 30, 2023 NMFS and the Corps respectively issued their final determinations as to all records responsive to the FOIA Requests (except as to those they referred to each other). *See* Dkt. 1 ¶ 53; Wilcox Dec. ¶ 18, Ex. 10 (confirming "the Corps completed its production…"). As stated above, the final determinations communicate "the scope of the documents [the agency] intends to produce and withhold…" *CREW v. FEC*, 711 F.3d at 188. Through these documents the Defendants took the position that they had completed their searches and had produced all of the records that they will agree to produce. However, EcoRights' February 8, 2024 letter identified dozens of instances where Defendants had failed to adequately search for and produce all non-exempt records. Wilcox Dec. Ex. 5.

Following these final determinations, and based on the shortcomings with Defendants' FOIA compliance that EcoRights had identified, Defendants searched for and produced over 1,200 pages of additional records. Wilcox Dec. ¶ 23, 24 (explaining that, on May 13, 2024 and April 3, 2024, Defendants produced an additional over 1,248 pages of records and 14 additional Excel spreadsheets, none of which it had produced thus far). Defendants, by issuing their final determinations, had clearly stated that they believed their search and production was in compliance with the law and that they did not intend to search for or produce any additional records. These productions only occurred because

EcoRights challenged those determinations, Defendants' inadequate search, and Defendants' wrongful withholding of records. These facts weigh in EcoRights' favor for the first two factors in *First Amend. Coal.*, 878 F.3d at 1128.

It is also clear that EcoRights "was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1128. Defendants had no basis to withhold the records that they later produced. Indeed, for records where they had a claim of exemption, Defendants withheld exempt material, and EcoRights did not challenge any of those claims. Wilcox Dec. ¶ 29. Therefore, all of the records produced in response to EcoRights' negotiations in the lawsuit were admittedly non-exempt records. *Hum. Rts. Def. Ctr.*, 2024 U.S. Dist. LEXIS 101948, at *9 (holding that agency's "decision to voluntarily disclose multiple files—only after this action was filed in federal court—show that [the plaintiff] was entitled to the documents at an earlier time."). Defendants were required to produce all non-exempt responsive records within a few weeks after the 20-business-day final determination deadline at the latest. *See* 5 U.S.C. § 552(a)(3)(A), (a)(6)(A)(i); *CREW v. FEC*, 711 F.3d at 188. As with the form or format violations, Defendants failed to meet that duty. However, even beyond that, Defendants' failure to carry out a reasonable search before making their final determinations resulted in Defendants unlawfully withholding these records, depriving EcoRights of these records for additional months. *See First Amend. Coal.*, 878 F.3d at 1130. Therefore, the third *First Amend. Coal.*, 878 F.3d at 1128, factor also strongly weighs in favor of EcoRights' eligibility to an award of fees and costs as to these records as well.[3]

The above information shows that EcoRights' lawsuit caused Defendants to produce wrongfully withheld information, by correcting their form or format violations, providing native format records, and by producing wrongfully withheld metadata from their records; to fix their inadequate search for records; to produce wrongfully withheld records that are responsive to the FOIA Requests; and to

---

[3] The Corps also amended its final determination on January 8, 2024 after EcoRights argued that the Corps did not identify what, if anything, was withheld as exempt from disclosure or any reasonably foreseeable harm supporting nondisclosure, as required by 5 U.S.C. § 552(a)(8)(A)(i), rendering the determination facially invalid. Wilcox Dec. ¶ 19. This presents an additional ground on which EcoRights is eligible to an award of fees and costs.

correct their inadequate final determinations to provide information necessary for EcoRights to assess Defendants' FOIA compliance. Each of these changes is sufficient to show EcoRights "substantially prevailed." *See, e.g., First Amend. Coal.*, 878 F.3d at 1129 (production of even single additional record sufficient); *Williams v. Dep't of Army*, No. 92-20088, 1993 U.S. Dist. LEXIS 15336, at *11 n.6 (N.D. Cal. Sep. 13, 1993) (eligible where additional information produced and additional search for records); *Protect the Public's Tr. v. IRS*, No. 23-340, 2024 U.S. Dist. LEXIS 27007, at *11-23 (D.D.C. Feb. 16, 2024) (any relief, even search that does not locate records, is sufficient for eligibility); *Edmonds v. FBI*, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005) (plaintiffs eligible for award of attorneys' fees and costs wherever they "succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit.") (citations omitted); *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009) (holding "[t]he threshold for sufficient relief to confer prevailing party status is not high."); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (finding prevailing party status where plaintiffs sought $17 million in damages and received $1). All of the above changes were substantial. As a result, these examples of "voluntary or unilateral change in position by the agency," both individually and collectively, render EcoRights eligible for attorneys' fees and costs under FOIA. *See* 5 U.S.C. § 552(a)(4)(E)(ii).

**b. EcoRights is entitled to an award of attorneys' fees and costs.**

The Court's determination of entitlement entails balancing "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Hiken*, 836 F.3d at 1044 (citation omitted). "[T]he first three factors simply assist a court in distinguishing between requesters who seek documents for private advantage versus those who request documents for public informational purposes." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("*Davy II*"). As to the fourth factor, "[t]he question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit"; and if the agency makes such a showing, that factor is "weighed along with other relevant considerations

1   in the entitlement calculus." *Id*. at 1162-63 (citation omitted). No single factor is dispositive in this

2   analysis, and the court should liberally construe these factors in favor of recovery as "a grudging

3   application of the attorney fees provision would be clearly contrary to congressional intent." *See First*

4   *Amend. Coal.*, 878 F.3d at 1126 (cleaned up, citations omitted).

5              **i. EcoRights' lawsuit provided public benefit.**

6              This lawsuit provided multiple public benefits. The Senate Judiciary Committee Report on FOIA

7   observed that under this criterion, "a court would ordinarily award fees, for example, where a . . . public

8   interest group was seeking information to further a project benefiting the general public…" S. Rep. No.

9   93-854, 93rd Cong. 2d Sess. 19. EcoRights sought these records to engage in advocacy and litigation to

10  protect ESA-listed species, a clear public interest purpose. *See, e.g., Tenn. Valley Auth. v. Hill*, 437 U.S.

11  153, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the

12  balance has been struck in favor of affording endangered species the highest of priorities.").

13             First, the information that EcoRights sought is of great public value. *See Davy II*, 550 F.3d at

14  1159 (explaining this factor "requires consideration of … the potential public value of the information

15  sought."). "A significant public interest lies in shedding light on the workings of [a federal agency]..."

16  *Wash. Post Co. v. Dep't of Agric.*, 934 F. Supp. 31, 36 (D.D.C. 1996). EcoRights sought records that

17  would shed light on the inner workings of the Defendants and whether they are complying with their

18  ESA duties to ensure Corps-managed dams are not jeopardizing ESA-listed species and their habitat.

19  EcoRights' lawsuit also benefited the public by obtaining such information, which has been useful in

20  ongoing advocacy and ESA litigation over the Corps' management of its dams. Further, EcoRights

21  disseminated information it learned from the records to other interested environmental organizations

22  seeking to compel the Corps to comply with its ESA obligations and also posted the received records to

23  its website, making them publicly available. Wilcox Dec. ¶ 28. While not a prerequisite to finding that

24  EcoRights has conferred a public benefit, the dissemination of this information supports that the

25  information disclosed has conferred a public benefit. *See, e.g., Church of Scientology*, 700 F.2d at 493.

26             Second, EcoRights' lawsuit "enhance[d] the public interest by bringing the government into

27  compliance with the law." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977). As discussed

above, Defendants had steadfastly resisted complying with FOIA, failing to timely act, to search for and produce all records, and to produce the records in the requested format. EcoRights' lawsuit ended that noncompliance, and this factor weighs strongly in favor of EcoRights entitlement to attorneys' fees.

### ii. EcoRights has no commercial interest in the records at issue.

The middle two factors in the entitlement analysis—commercial benefit to plaintiff and plaintiff's interest in the records—"are often considered together." *Judicial Watch v. DOJ*, 878 F. Supp. 2d 225, 236 (D.D.C. 2012). These questions are routinely decided in favor of "not for-profit, tax-exempt, educational organization[s]" like EcoRights that "ha[ve] no commercial interest in this case." *Id.* (internal quotation marks omitted); *see also Church of Scientology*, 700 F.2d at 494 ("where the plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information."). EcoRights certainly has no "clear pecuniary or other economic interest in seeking disclosure, so that there is no need for an added incentive to bring a claim under" FOIA. *Local 598 v. U.S. Army Corps of Eng'rs*, 841 F.2d 1459, 1462 (9th Cir. 1988). As a result, these factors should not be disregarded, but instead strongly "weigh in favor of a fee award, since the fee award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims." *See id.* at 1461-62 (citations omitted).

### iii. Defendants' failure to comply with FOIA was unreasonable.

Defendants bear the burden of showing reasonableness, though that is not dispositive even when and agency can do so. *Davy II*, 550 F.3d at 1162-63. Regardless, Defendants cannot make this showing given that Defendants were "recalcitrant in [their] opposition to a valid claim [and] otherwise engaged in obdurate behavior." *See id.* at 1162.

As a preliminary matter, FOIA requires an agency to issue a final determination resolving an information request within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i). FOIA allows a decision deadline extension of up to 10 business days if certain limited "unusual circumstances" are present. 5 U.S.C. § 552(a)(6)(B)(i). However, Defendants did not invoke unusual circumstances and instead simply failed to comply with this deadline, only purporting to provide final determinations well after their deadline, which determinations were facially invalid. *See* Dkt. 1 ¶ 53;

1   Wilcox Dec. ¶¶ 15-19. This was not reasonable.

2       Additionally, FOIA requires an adequate search and prompt production of all responsive records

3   in the form or format that a plaintiff requests. 5 U.S.C. § 552(a)(3)(A), (B), (C). As discussed throughout

4   this Motion, Defendants failed to comply with these duties in multiple ways. This was unreasonable.

5       With regard to Defendants' form or format violations of FOIA, EcoRights' February 8, 2024

6   letter (Wilcox Dec. Ex. 5) raised disputes with Defendants' final determinations and production of

7   records. In that letter, EcoRights quoted the binding Ninth Circuit statement that, "when an agency

8   already creates or converts documents in a certain format … requiring that it provide documents in that

9   format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as

10  to significant interference or burden." *Pub.Resource.org v. IRS*, 78 F. Supp. 3d 1262, 1266 (N.D. Cal.

11  2015) (quoting *TPS, Inc. v. DOD*, 330 F.3d 1191, 1195 (9th Cir. 2003)) (emphasis in *Pub.Resource.org*

12  omitted). EcoRights also argued this point in front of the Court at the April 11, 2024 case management

13  conference, with the Court indicating that it agreed that the Defendants should likely produce these

14  records in the requested format, transcript excerpts of which EcoRights served on counsel when

15  Defendants' current counsel was substituted in. Wilcox Dec. ¶ 27, Ex. 9. EcoRights reiterated these

16  positions numerous times, providing additional support, in conferral with Defendants. *See, e.g., id.*

17  However, despite all of this support for EcoRights' right to have native format records, Defendants only

18  finally changed their position when it became clear that EcoRights would not back down and that they

19  were going to be forced to litigate their losing argument. *Id.* ¶¶ 26, 28. Defendants' unreasonable

20  decision to fight against fixing this plain error in their production was plainly unreasonable.

21      In addition to these form or format violations, EcoRights also successfully convinced Defendants

22  to search for and produce over 1,200 pages of additional records. Wilcox Dec. ¶¶ 21, 23, 24.

23  Defendants' failure to locate and produce these records was not reasonable. EcoRights' counsel located

24  the missing records by skimming the production in a matter of hours and locating places where files

25  were plainly referenced on the face of produced records but were not produced, such as email messages

26  that indicated they contained attachments but those attachments were not produced. *Id.* ¶ 20. These

27  dozens of inadequacies were obvious on the face of the records based on even a cursory review.

1  Defendants unreasonably failed to carry out this basic review of their production to locate and produce

2  these many pages of additional records in the long delay before their final determination and production.

3       FOIA also requires an agency to provide "an estimated date on which the agency will complete

4  action on the request." 5 U.S.C. § 552(a)(7)(B)(ii). Defendants failed to provide an estimated completion

5  date after missing their determination deadline. Wilcox Dec. ¶ 17. This was not reasonable.

6       In sum, Defendants unreasonably failed to comply with FOIA in numerous ways. These

7  instances of stonewalling, delay, finding and producing responsive records long after they should have,

8  and other failures by Defendants to meet their obligations under FOIA are "exactly the kind of behavior

9  the fee provision was enacted to combat." *Negley v. FBI*, 818 F. Supp. 2d 69, 77 (D.D.C. 2011) (quoting

10  *Davy II*, 550 F.3d at 1163). Defendants' unreasonable actions necessitated this lawsuit and caused

11  EcoRights to reasonably incur the attorneys' fees and costs at issue, and this factor strongly weighs in

12  favor of EcoRights' entitlement to its requested fee and cost award.

13       **c.   EcoRights' requested award of fees and costs is reasonable under the circumstances.**

14       EcoRights should be granted an award of all attorneys' fees and costs requested in this matter.

15  The amount of fees is a matter to be determined on the facts of each case. *Hensley v. Eckerhart*, 461

16  U.S. 424, 429 (1983). "Where a plaintiff has obtained excellent results, his attorney should recover a

17  fully compensatory fee." *Id.* at 435. "The 'customary method' for awarding fees is the lodestar method,

18  which is performed by multiplying the number of hours reasonably expended by the prevailing party in

19  the litigation by a 'reasonable hourly rate.'" *Hiken*, 836 F.3d at 1044 (citation omitted). There is a

20  "strong presumption" that their product, the lodestar figure, represents a reasonable fee award that

21  should only be adjusted in "rare and exceptional cases." *See id.*; *Fischer v. SJB-P.D. Inc.*, 214 F.3d

22  1115, 1119 n.4 (9th Cir. 2000). The lodestar also includes compensation for time spent securing the fee

23  award. *See, e.g., Hiken*, 836 F.3d at 1046 (citation omitted). "The burden of justifying any deviation

24  from the 'lodestar' rests on the party proposing the deviation." *Copeland v. Marshall*, 641 F.2d 880, 892

25  (D.C. Cir. 1980) (*en banc*). "When the Government seeks to rebut a rate or calculation or hours billed, it

26  must provide … 'equally specific countervailing evidence.'" *Piper v. DOJ*, 339 F. Supp. 2d 13, 24

27

1  (D.D.C. 2004) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C.

2  Cir. 1982)).

3         In obtaining all responsive, non-exempt records in the requested form or format without having

4  to engage in litigation that would have inherently resulted in even more delay than Defendants already

5  caused, EcoRights achieved its aims in bringing this case, "excellent results" that warrant recovery of

6  fully compensatory attorneys' fees. *See Hensley*, 461 U.S. at 440 ("substantial relief" equivalent to

7  "excellent results"); *see also Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("excellent result"

8  occurred when the lawsuit represented "sustained legal effort to bring about a common good."). Though

9  this case was not subject to dispositive motion briefing, it was still complex, requiring significant

10  knowledge of FOIA and general litigation expertise, requiring counsel to expend significant time

11  enforcing EcoRights' rights under FOIA. *Sw. Ctr. for Biological Diversity v. Bartel*, No. 98-2234, 2007

12  U.S. Dist. LEXIS 64232, at *26 (S.D. Cal. Aug. 30, 2007) (defendants' active opposition and

13  challenging legal issues justified substantial time expenditure). Though all time incurred was reasonable,

14  EcoRights has engaged in significant billing judgment reductions to further reduce its lodestar.

15  EcoRights' counsel's hourly rates are also reasonable San Francisco Bay Area market rates. As a result,

16  the Court should award all requested attorneys' fees and costs in this matter.

17         **i.  EcoRights' hourly rates in this matter are reasonable.**

18         Counsel requests recovery for their attorneys' fees in this matter at reasonable San Francisco Bay

19  area market rates. In this FOIA citizen suit, counsel are entitled to the hourly rates "prevailing in the

20  community for similar work performed by attorneys of comparable skill, experience, and reputation."

21  *Camacho v. Bridgeport Fin, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant community in this

22  case is the San Francisco Bay metropolitan area, given that this is where the Court sits. *Gates v.*

23  *Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The Ninth Circuit has held that "[a]ffidavits of the

24  plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

25  determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory

26  evidence of the prevailing market rate." *Hiken*, 836 F.3d at 1044 (citation omitted). This is precisely the

27  information that EcoRights relies on to support its counsels' reasonable hourly rates.

EcoRights here relies on affidavits of attorneys discussing reasonable San Francisco Bay Area market rates. Declaration of Christopher Sproul ("Sproul Dec.") Exs. 5-8 (noting rates these attorneys actually charge and are paid by paying clients in San Francisco). These declarations attest to the reasonableness of these rates and, indeed, the reasonableness of *much higher rates than counsel here requests*. EcoRights has also supported in detail that its counsel's rates accord with prevailing San Francisco Bay Area legal market rates by reference to well over 100 data points identifying examples where courts found similar, and often much higher, rates reasonable for attorneys of comparable skill, experience, and reputation. Sproul Dec. ¶¶ 19-29 (providing case citations and charts to support hourly rates). It is well settled that in public interest cases, "judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market…" *Hensley*, 461 U.S. at 447; *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (public interest attorneys entitled to rates charged by corporate attorneys). EcoRights' reliance on a wide array of complex federal litigation cases in supporting its rates is appropriate. *See, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) ("the proper scope of [attorney rate] comparison ... extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter"); *Camacho*, 523 F.3d at 981 (court should not limit itself to fee awards from specific subject matter at issue in assessing reasonable rates); *Perfect 10 v. Giganews*, No. 11-7098, 2015 U.S. Dist. LEXIS 54063, at *45 (C.D. Cal. Mar. 24, 2015); *Stonebrae, L.P. v. Toll Bros.*, No. 08-221, 2011 U.S. Dist. LEXIS 39832, at *9-13 (N.D. Cal. Apr. 7, 2011). Furthermore, it is clear that Congress intended FOIA litigators to be compensated at the same rates as other federal court practitioners. *See* MARCH 14, 1974 HOUSE DEBATE ON H.R. 12471 AT 29, *reprinted in* COMM. ON GOV'T OPERATIONS, 94TH CONG., FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (P.L. 93-502), 1975, at 264 ("[t]he committee feels that once the Government has to *take full responsibility* for litigating indefensible cases, it will think twice before going to the mark in the first instance.") (emphasis added); MAY 30, 1974 Senate Debate on S. 2543 at 16, *reprinted in* COMM. ON GOV'T OPERATIONS, 94TH CONG., FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (P.L. 93-502), 1975, at 297 (Senator Kennedy, the FOIA Amendments' Senate sponsor, noting "courts should look to the prevailing rate on attorneys' fees," and

rates should not be based on "whether the specific attorney involved is from Wall Street or a public interest law firm."); *see also* S. Rep. 93-854 at 18 (1974) (quoting Senator Thurmond's hope that Amendments would allow citizens to "take advantage of the law to the same extent as the giant corporations with large legal staffs.").

The data points that EcoRights relies on specifically include rate determinations where the Court found rates essentially identical to the rates claimed in this matter reasonable for these attorneys. Sproul Dec. ¶ 19; *Ecological Rights Found. v. Hot Line Construction, Inc.*, No. 20-1108, 2024 U.S. Dist. LEXIS 129282, at *6-8 (C.D. Cal. July 19, 2024) (awarding Mr. Wilcox $825/hour and Mr. Sproul $1,055/hour as reasonable 2024 Los Angeles/Orange County rates); *Inland Empire Waterkeeper v. Corona Clay Co.*, No. 18-333, 2024 U.S. Dist. Lexis 10550 (C.D. Cal. Jan. 19, 2024) (currently on appeal) (awarding Mr. Wilcox $775/hour and Mr. Sproul $995/hour as reasonable 2023 Los Angeles/Orange County rates); *Los Angeles Waterkeeper v. American Reclamation,* No. 21-1140, Dkts. 45, 66 (C.D. Cal. April 15, 2022) (awarding Mr. Sproul $950/hour twice and Mr. Wilcox $675/hour as reasonable 2022 Los Angeles/Orange County rates twice). While some of the San Francisco Bay area market rates requested here are marginally higher than those in the cited decisions finding counsel's Los Angeles Orange County Metropolitan rates reasonable (for example, Mr. Wilcox's 2023 San Francisco rate is 3% higher while Mr. Sproul's is identical), that reflects the somewhat higher rates commanded in this jurisdiction. *Meguerditchian v. Aetna Life Ins. Co.*, No. 12-10999, 2014 U.S. Dist. LEXIS 111635, at *9 (C.D. Cal. Aug. 12, 2014) ("While the Los Angeles legal market is certainly competitive and expensive, San Francisco is even more so."). The similarity of these rates, or indeed the precise match in some examples, is further support that the rates that EcoRights' counsel here requests are reasonable.

Additionally, the awards in *Hot Line Construction, Inc.*, 2024 U.S. Dist. LEXIS 129282; *Corona Clay Co.*, 2024 U.S. Dist. Lexis 10550; and *American Reclamation,* No. 21-1140, Dkts. 45, 66, by awarding Mr. Sproul and Mr. Wilcox their requested hourly rates based on a similar methodology to that used here, represent endorsements of that methodology for setting reasonable rates. In addition to these examples, citing only to Mr. Sproul's declaration filed as a fee expert in that matter (Mr. Sproul was not counsel), Judge Edward J. Davila of this Court found plaintiff's counsel's 2023 hourly rates reasonable

in *S.F. Baykeeper v. City of Sunnyvale*, No. 20-824, 2024 U.S. Dist. LEXIS 167582, at *4 (N.D. Cal. Sep. 17, 2024). This declaration followed the same methodology as Mr. Sproul used here to support his and Mr. Wilcox's reasonable rates, further supporting this methodology. Sproul Dec. ¶ 19.

While the above information provides sufficient support that these rates are reasonable on its own, the Court should also be aware that EcoRights' counsel took this case wholly on a contingency basis. Furthermore, EcoRights' counsel is only requesting recovery at its historic rates applicable in the years in which the time in the matter was incurred. Indeed, though inflation in the legal market was approximately 8.1% from December 2023-December 2024, the most recent month with inflation data, and EcoRights' counsel will be increasing their rates for 2025 to account for such inflation and for their increased experience, EcoRights has only requested recovery for 2025 time at 2024 rates in this matter in the exercise of further billing judgment. Sproul Dec. ¶¶ 18, 20-21, 27-28. It is axiomatic that "compensation received several years after the services were rendered...is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case..." *Wishtoyo Found. v. United Water Cons. Dist.*, No. 16-3869, 2019 U.S. Dist. LEXIS 39927, at *24-25 (C.D. Cal. Mar. 2, 2019) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989)). This is particularly so where counsel do not recover at current year rates or with interest to account for the delay in payment. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement."). EcoRights' decision to only request recovery at its historical rates and to not request recovery for time incurred in 2025 at its higher 2025 rates, instead only requesting recovery at 2024 rates for this time, is further evidence of the reasonableness of the rates requested here.

### ii.  EcoRights' time incurred in this matter was reasonable.

EcoRights only requests recovery for compensable time in this matter that was necessary for the excellent results obtained. EcoRights has already exercised billing judgment in this matter, cutting significant time, and the Court should grant EcoRights' request for compensation for all remaining time.

Under federal fee-shifting statutes, Plaintiffs' counsel are entitled to be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee… By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Without "specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Id.* at 1116. Counsel's time on all tasks was reasonable and should be awarded in full.

EcoRights "obtained excellent results" in this case, and its attorneys should therefore "recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. EcoRights' goal was to compel Defendants to cease their long failure to carry out legally adequate searches for requested records and promptly produce non-exempt information in the requested format. After successful negotiations, EcoRights was left with no substantive disputes. EcoRights finally had all of the 4,800+ pages of records that it was due under the law in the format that it had requested, including over 1,200 pages of records produced after Defendants purported to have produced all responsive records, 264 separate records where Defendants eventually corrected their failure to produce those records in the requested format, and previously withheld metadata for an additional 50 records. In short, EcoRights finally had a suitable production in response to the FOIA Requests. Apart from the excessive delays that Defendants' conduct entailed, this was complete success. EcoRights' counsel reasonably expended their time here in pursuit of this success, and the total number of hours requested here is reasonable under the circumstances.

EcoRights has exercised billing judgment and cut its lodestar by 8.06 hours, to reduce its attorneys' fees and paralegal fees by $7,439.85. Wilcox Dec. ¶ 54. This reduction includes EcoRights' elimination of time incurred by timekeepers who had a small number of hours in this case. Wilcox Dec. ¶ 33. All remaining time, as discussed below, was necessary to achieve EcoRights' goals in this matter.

EcoRights spent approximately 13.3 hours ($9,267.00) developing the facts included in the complaint; drafting the complaint; and carrying out initial case management related to the complaint, including service of case initiating documents on the Defendants. Wilcox Dec. ¶¶ 34-37, Ex. 12. While this amount of time is reasonable on its own, it was multiplied to some extent by issues with service. EcoRights attempted to serve NMFS twice by certified mail, *see* Fed. R. Civ. P. 4(i), with the service materials being lost in transit both times. EcoRights requested that opposing counsel agree to accept service on behalf of NMFS by email given that Defendants were already represented and the Defendants both already had actual notice of the lawsuit. *Id.* ¶ 35. Opposing counsel declined, which required EcoRights to expend additional time and costs to serve NMFS by personal service. *Id.*; Fed. R. Civ. P. 4(i).

EcoRights incurred approximately 13.3 hours of attorney time ($11,519.50) related to addressing case management issues. Wilcox Dec. ¶¶ 38-40, Ex. 13. This time was reasonable under the circumstances. Despite not going through dispositive motions briefing, this case has 49 docket entries. This includes, amongst other items not recounted here, submission of two case management statements, Dkts. 14, 17; attendance at two case management conferences, Dkts. 15, 40; *eleven* stipulations to extend Defendants' answer deadline, Dkts. 8, 10, 16, 21, 24, 25, 30, 33, 36, 38, 44 (some of which also requested additional relief from case management obligations); and two stipulations for the court to set a fee motion briefing schedule, Dkts. 37, 47. While some of these filings were resolved without dispute, some others were unnecessarily drawn out by Defendants' attempts to insert legal arguments into joint filings. Wilcox Dec. ¶ 39. Defendants' declination to remove the inappropriate statements led to multiple rounds of revisions in some cases where EcoRights had to make it clear that the offending statements were Defendants' positions alone before they could be signed. *Id.* Importantly, a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Miller v. Holzmann,* 575 F. Supp. 2d 2, 22 (D.D.C. 2008). As a result, all time spent was reasonable.

EcoRights spent approximately 10.8 hours ($9,288.00) reviewing produced records and final determination documents. Wilcox Dec. ¶¶ 41-43, Ex. 14. Defendants produced a total of over 4,800

1    pages of records, two final determinations, and their withholding index. *Id.* ¶ 41. Even ignoring that

2    some of this time was spent on the review of documents other than the produced records (final

3    determinations and withholding index), this would be review at a rate of over 444 pages per hour. *Id.* It

4    is well accepted that counsel can recover for time spent reviewing records for properness of redactions

5    and adequacy of search, and EcoRights should be fully compensated for its counsel's speedy review of

6    the records and other documents for these limited purposes. *See, e.g., ACLU Immigrants' Right Projects*

7    *v. U.S. Immigration & Customs Enf't*, No. 16-6066, 2018 U.S. Dist. LEXIS 9037, at *11 (N.D. Cal. Jan.

8    19, 2018) (citations omitted).

9           EcoRights expended significant effort conferring with Defendants in an attempt to resolve the

10    substantive issues in this lawsuit without the need for costly and time-consuming dispositive motions

11    practice, which ultimately resulted in EcoRights spending approximately 23.1 hours on these tasks

12    ($20,153.50). Wilcox Dec. ¶¶ 44-45, Ex. 15. Ultimately these efforts proved highly successful with

13    Defendants producing all of the long-withheld records EcoRights was due in the requested format. *Id.* ¶¶

14    18-29, 41. This was a highly efficient resolution of the many merits issues EcoRights identified.

15    However, Defendants' actions also multiplied the attorneys' fees here. Taking the form or format

16    dispute as an example, EcoRights conferred with Defendants for over 15 hours regarding fixing this

17    production shortcoming, including researching the law on this topic and providing it to Defendants in

18    conferral letters urging correction of the production. *Id.* ¶ 44. Defendants only finally agreed to fix this

19    problem when EcoRights informed Defendants it intended to brief the issue forthwith. *Id.* Defendants'

20    intransigence caused EcoRights to expend more time on conferral than would have otherwise been

21    necessary. Thus, this amount of time was reasonable. *See, e.g., Holzmann,* 575 F. Supp. 2d at 22.

22           Having negotiated a full resolution of the disputed merits issues, EcoRights attempted to avoid

23    the present motion by engaging in good faith attorney fee and cost settlement negotiations. EcoRights

24    ultimately spent 15.88 hours ($14,267.70) attempting to reach a settlement of the fee and cost dispute

25    without litigation. Wilcox Dec. ¶¶ 46-47, Ex. 16. This involved preparing time records for opposing

26    counsel review, legal research to explain why EcoRights should be paid the sums it requested, and

27    drafting and consideration of numerous counterproposals. *Id.* That settlement negotiations ultimately

prove unsuccessful does not render them non-compensable. *See, e.g., Estiverne v. Esernio-Jenssen*, 908 F. Supp. 2d 305, 310 (E.D.N.Y. 2012) (awarding fees for unsuccessful settlement negotiations because time was reasonably expended and "disallowing attorney's fees for settlement negotiations, successful or otherwise, would have the effect of discouraging attorneys from pursuing pre-trial settlements.") (citations omitted); *Holzmann*, 575 F. Supp. 2d at 28-29 (collecting cases holding that fees for settlement discussions are recoverable regardless of outcome). Had the parties been able to settle EcoRights attorneys' fees and costs it would have preserved the Court's and the parties' resources and would have avoided the costs incurred briefing this motion. As a result, EcoRights' time spent on these tasks was reasonably incurred and should be compensated in full.

Having been unable to resolve EcoRights' attorneys' fees and costs informally, the Parties engaged in mediation. EcoRights incurred a relatively modest 10.69 hours ($9,128.00) preparing for (including drafting a 14-page mediation brief providing factual and legal support for its fee and cost recovery figures) and attending the pre-mediation and mediation meetings. Wilcox Dec. ¶¶ 48-49, Ex. 17. This amount of time was entirely reasonable to prepare for and carry out a good faith mediation.

Finally, having been unable to resolve EcoRights' claim for attorneys' fees and costs through either informal negotiations or mediation, EcoRights has briefed the present motion. As of January 21, 2025, EcoRights has spent 60 hours ($50,873.50) researching, developing, drafting, and revising the present brief and declarations of Christopher Sproul and Stuart Wilcox, including all attachments thereto. Wilcox Dec. ¶¶ 50-51, Ex. 18. A fee motion is necessarily a complex and time-consuming endeavor as "plaintiffs have the burden of supporting the rates sought and time spent, and [are] required to review pertinent legal authority, obtain declarations, gather and present time records, research current hourly rates for...attorneys, and prepare the motion papers." *A.D. v. State Highway Patrol*, No. 07-5483, 2013 U.S. Dist. LEXIS 169275, at *24 (N.D. Cal. Nov. 27, 2013). EcoRights is entitled to recover its "fees on fees" sought here. *See, e.g.*, *Camacho*, 523 F.3d at 981; *A.D.*, 2013 U.S. Dist. LEXIS 169275, at *23-24 (awarding $120,970 in fees on fees); *Golden Gate Audobon Soc'y v. Corps*, 732 F. Supp. 1014, 1022 (N.D. Cal. 1989) (300 hours of fees on fees work reasonable given difficult issues concerning entitlement and appropriate fees amount). EcoRights has endeavored to minimize the

amount of time spent on this Motion while still adequately developing its arguments and evidence, and the overall time spent was reasonable under the circumstances.

In addition to incurring only a reasonable number of hours on the tasks in this matter, EcoRights also took other actions to reduce the cost of suit. EcoRights sought to avoid motions practice where possible, resolving all of the merits disputes through negotiated outcomes without the need for costly and time-consuming dispositive motions and by attempting in good faith to do the same with regard to EcoRights' request for an award of attorneys' fees and costs via attempted settlement and mediation. *See Wishtoyo*, 2019 U.S. Dist. LEXIS 39927, at *17 (finding that the plaintiffs' counsel, including Mr. Sproul, "attempted to minimize the hours spent on the action" in similar ways, supporting reasonableness of overall hours). EcoRights also limited the number of attorneys working on the case to avoid unnecessary duplication of effort. EcoRights further assigned the majority of work on this matter to its most junior counsel, who consequently bills at lower rates. These actions kept the costs of the lawsuit far lower than they otherwise would have been.

EcoRights also reduced costs by billing for work done by its attorneys that was arguably paralegal in nature at a lower paralegal rate. Sproul Dec. ¶¶ 30-35. Such time is compensable at prevailing paralegal market rates. *Wishtoyo*, 2019 U.S. Dist. LEXIS 39927, at *21-22 (citing *Missouri*, 491 U.S. 274); *Hirsch v. Compton Unified Sch. Dist.*, No. 12-1269, 2013 U.S. Dist. LEXIS 64556 at *9 (C.D. Cal. May 3, 2013); *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *Intamin, Ltd. v. Magnetar Technologies Corp.*, No. 04-511, 2009 U.S. Dist. LEXIS 123604, at *3 (C.D. Cal. Dec. 28, 2009); *Pierce v. County of Orange*, 905 F. Supp.2d 1017, 1031 (C.D. Cal. 2012) (rejecting arguments that lawyers should be denied compensation for performing relatively routine tasks when they were necessary and there was no other lesser paid staff to perform them).

### iii.   EcoRights' costs in this matter are reasonable.

EcoRights only incurred reasonable costs of $1,122.62 in this matter. Sproul Dec. Ex. 10. EcoRights was required to pay a filing fee ($402) and fees associated with service on Defendants by Certified Mail ($86.94) to get into federal court. *Id.* When service by mail was hampered for NMFS,

Defendants' counsel refused to accept service of the complaint on behalf of their client, requiring EcoRights to serve personally, which cost $175.80. *Id.* The only other costs are $337.10 in legal research costs, necessary for developing legal arguments that successfully convinced Defendants to fix their faulty production and that attempted to encourage Defendants to settle EcoRights' fees and costs; $51.48 for required courtesy copies to the Court; and $69.30 for transcript costs, which were necessary to bring opposing counsel up to speed on the Court's admonishment that Defendants ought to provide documents in EcoRights' requested format (substituted counsel was not present at the relevant case management conference). *Id.* These costs are typical expenses normally charged to a paying client, were necessarily incurred, and are recoverable in full. *Grove v. Wells Fargo Fin. Cal., Inc*., 606 F.3d 577, 579-82 (9th Cir. 2010); *Perfect 10*, 2015 U.S. Dist. LEXIS 54063, at *89-91; *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 328-29 (N.D. Cal. 1995). As a result, the Court should grant EcoRights' requested costs in full.

## V.    Conclusion

For the foregoing reasons, EcoRights respectfully requests that the Court award $124,497.20 in attorneys' fees and $1,122.62 in costs for a total of **$125,619.82** against Defendants.[4]

Respectfully submitted,

Dated:  January 23, 2025

*Christopher A. Sproul*

Christopher Sproul, Attorney for Plaintiff

---

[4] As stated above, EcoRights will seek additional attorneys' fees and costs in its reply briefing.