United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, | Case No.  23-cv-05309-MMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al., | |
| Defendants. | Re: Dkt. No. 50 |

On October 17, 2023, plaintiff Ecological Rights Foundation ("EcoRights") filed the above-titled action.  Now before the Court is its "Motion for Attorneys' Fees and Costs." Defendants U.S. Army Corps of Engineers ("USACE") and National Marine Fisheries Service ("NMFS") have jointly filed an Opposition, to which EcoRights has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

## BACKGROUND

Plaintiff EcoRights is a California "non-profit, public benefit corporation, . . . devoted to furthering the rights of all people to a clean, healthful, and biologically diverse environment."  (See Compl. ¶ 15).  Defendant USACE "exercises regulatory authority" over facilities along the Yuba River pursuant to the Clean Water Act (see Compl. ¶ 24), and defendant NMFS "is responsible for taking certain conservation actions affecting . . . anadromous fish species" that reside in the Yuba River (see Compl. ¶ 25).  EcoRights,

United States District Court
Northern District of California

"seek[ing] to understand [USACE's] and NMFS' actions and policies that threaten the Yuba River" (see Compl. ¶ 20), submitted several Freedom of Information Act ("FOIA") requests it anticipated would "shed light on these environmental effects" and "inform ongoing and future advocacy efforts" (see Compl. ¶ 4).

**A. FOIA Requests at Issue**

On May 8, 2023, EcoRights submitted two FOIA requests to USACE (see Compl. ¶¶ 40, 41) along with "four companion FOIA requests to NMFS" (see Compl. ¶ 51). The requests directed at USACE sought all correspondence between USACE and NMFS "regarding Daguerre Point Dam, the Brophy Diversion, the Cordua Diversion, Englebright Dam, and the Narrows 1 and Narrows 2 hydropower facilities on the Yuba River in California." (See Compl. ¶ 4; see also Declaration of Stuart Wilcox in Support of Motion for Attorneys' Fees and Costs (hereinafter, "Wilcox Decl.") Ex. 2 at 2, 11-12).[1,2] The requests directed at NMFS sought the same information, plus any "internal NMFS correspondence" regarding the above-referenced facilities on the Yuba River. (See Compl. ¶ 51; see also Graff Decl. Attachs. 1, 2, 9, 11).[3] Additionally, each of the above-

---

[1] In citing to pages, the Court uses herein the numbers assigned thereto by the filer and, in the absence thereof, to the numbers assigned by this District's electronic filing system.

[2] Specifically, the FOIA requests sent to USACE asked for "[a]ll correspondence between the Corps Sacramento District, San Francisco Division and Headquarters, and the National Marine Fisheries Service . . . concerning Daguerre Point Dam, the Brophy Diversion, and the Cordua Diversion on the Yuba River in California" (see Wilcox Decl. Ex. 2 at 2) and "[a]ll correspondence between the Corps Sacramento District, San Francisco Division and Headquarters, and the National Marines Fisheries Service . . . concerning Englebright Dam, and the Narrows 1 and Narrows 2 hydropower facilities on the Yuba River in California" (see Wilcox Decl. Ex. 2 at 11-12).

[3] Specifically, the FOIA requests sent to NMFS asked for "[a]ll correspondence between NMFS and U.S. Army Corps of Engineers . . . concerning Daguerre Point Dam, the Brophy Diversion, and the Cordua Diversion," (see Graff Decl. Attach. 1 at 2), "[a]ll correspondence between NMFS and the U.S. Army Corps of Engineers . . . concerning Englebright Dam, and Narrows 1 and Narrows 2 hydropower facilities" (see Graff Decl. Attach. 2 at 2), "[a]ll internal agency communications between any NMFS staff concerning Daguerre Point Dam, and two associated water diversions- the Brophy Diversion and the Cordua Diversion- on the Yuba River in California" (see Graff Decl. Attach. 9 at 2), and "[a]ll internal agency communications between any NMFS staff concerning Englebright Dam, and Narrows 1 and Narrows 2 hydropower facilities on the

2

referenced requests sought production "either in the original computer file format the documents were created in and are presently stored in or in the form of TIFF files accompanied with load files rendering the documents usable in standard legal profession document processing software."  (See, e.g., Wilcox Decl. Ex. 2 at 3 unnumbered paragraph 4)

**B.  Records Productions**

The Court addresses the defendants' records productions in the chronological order in which they were made.

**1.  NMFS's Productions**

On May 11, 2023, NMFS received the four above-referenced FOIA requests from EcoRights (see Graff Decl. ¶ 4), two of which, as noted, sought correspondence between USACE and NMFS.  On May 17, 2023, those two requests were, with EcoRights' agreement, consolidated into a single request.  (See Graff Decl. ¶¶ 5-7).  On July 7, 2023, NMFS provided EcoRights with a determination letter in response to the consolidated request, notifying EcoRights that it would produce 72 records in full and that it had identified 63 records that originated with USACE, which would be referred to "USACE for a release determination/direct response."  (See Graff Decl. Attach. 5 at 2).[4]

On July 26, 2023, NMFS provided EcoRights with a determination letter in response to EcoRights' request for internal communications concerning the Daguerre Point Dam, the Brophy Diversion, and the Cordua Diversion, notifying EcoRights that it would produce "276 records in full," would produce "12 records with partial redactions," and would withhold 111 records in full.  (See Graff Decl. ¶ 16).

On August 22, 2023, NMFS provided EcoRights with a determination letter in response to EcoRights' request for internal communications regarding the Englebright

_____

Yuba River in California (see Graff Decl. Attach. 11 at 2).

[4] As both parties, throughout their respective briefing, use Arabic numerals in connection with their references to production, the Court, for ease of reference, does so as well.

1   Dam, notifying EcoRights that it would produce 142 records in their entirety, would

2   produce one record with partial redactions, would withhold 11 records in full, and that it

3   had identified one record that originated with USACE, which would be referred to

4   "USACE for a release determination/direct response."  (See Graff Decl. Attach. 12 at 2).

5   All three letters stated the determinations "complete[d] [NMFS's] response to

6   [EcoRights'] request" and notified EcoRights of its right to file an administrative appeal.

7   (See Graff. Decl. Attachs. 5, 10, 12).

8       **2.  USACE's Productions**

9   On December 30, 2023, USACE provided EcoRights with a determination letter

10  regarding the FOIA requests made directly to USACE as well as the records that were

11  referred to USACE by NMFS (see Herrera Decl. ¶ 6, Ex. B), notifying EcoRights that it

12  would "provide[ ] [EcoRights] with most of the information requested" from USACE but

13  that some records would be partially redacted and some would be withheld.  (See

14  Herrera Decl. Ex. B at 2).[5]  USACE also notified EcoRights that it had identified 45

15  records that originated with NMFS and were being referred to NMFS "for a review/release

16  determination and a direct response."  (See Herrera Decl. Ex. B at 2).[6]  The records

17  referred to USACE from NMFS were released in full.  (See Herrera Decl. Ex. B at 3).

18  On February 8, 2024, EcoRights sent a conferral letter to USACE and NMFS,

19  identifying 91 records purportedly missing from the productions made as of that date.

20  (See Wilcox Decl. Ex. 5).  After reviewing the conferral letter, USACE undertook

21  additional searches and "identified 40 records to be released in full, 42 records to be

22  withheld in full, and one record to be released with redactions," the 41 released records

23

24          [5] The determination letter does not include the specific number of records
    referenced therein.

25

26          [6] NMFS received the referral on January 4, 2024 (see Martin Decl. ¶ 4) and
    produced 38 records to EcoRights on January 17, 2024 (see Martin Decl. Attach. 2 at 2).

27  The remaining 8 records were referred back to USACE, as NMFS deemed them
    "unresponsive," and USACE produced those records to EcoRights the next day.  (See

28  Martin Decl. ¶ 7).

addressing 17 of the 91 records EcoRights, in its conferral letter, had listed as "missing."
(See Herrera Decl. ¶ 10). On March 13, 2024, the 41 records were produced to
EcoRights (see Herrera Decl. ¶ 10), and, on April 3, 2024, an additional 5 records, 3 of
which EcoRights, in its conferral letter, had listed as "missing," were provided to
EcoRights (see Herrera Decl. ¶ 11).

### 3. Form and Format of Productions

The February 8, 2024, conferral letter sent by EcoRights to USACE and NMFS
also reiterated EcoRights' request as to format, namely, that documents be produced
"either in the original computer file format the documents were created in and are
presently stored in or in the form of TIFF files accompanied with load files rendering the
documents usable in standard legal profession document processing software." (See
Wilcox Decl. Ex. 5 at 2). Up to that point both USACE and NMFS had produced all
documents to EcoRights in PDF format. (See Martin Decl. ¶¶ 15-18; see also Wilcox
Decl. ¶ 18; Herrera Decl. ¶ 13).

On June 10, 2024, following various email exchanges between the parties'
counsel (see Wilcox Mot Decl. ¶9, Ex. 9), "[d]efendants agreed to produce in native
format: (1) all records produced by [USACE] that had not yet been produced in native
format (except records that had been partially redacted, as per EcoRights' compromise
proposal) and (2) all records referred to NMFS from [USACE]" (see Wilcox Decl. ¶ 28);
"[d]efendants also agreed to produce an index of metadata for all records referred to
[USACE] from NMFS" (see Wilcox Decl. ¶ 28).

In accordance with said agreement, USACE, on June 18, 2024, sent to EcoRights
the above-referenced "index of metadata," after which USACE, on July 3, 2024, produced
in native format records responsive to the first of the above-referenced categories of
documents and, on July 22, 2024, produced in native format records responsive to the
second of the above-referenced categories of documents. (See Herrera Decl. Ex. O at
2). The July 22, 2024, releases were the final document productions in response to the
FOIA requests here at issue.

1    EcoRights, based on what it characterizes as the "excellent results it achieved"

2    (<u>see</u> Mot. at 4:14-15), brings the instant motion for an award of attorneys' fees and costs

3    pursuant to 5 U.S.C. § 552(a)(4)(E).

4

5                                         **DISCUSSION**

6         "FOIA provides that a 'court may assess against the United States reasonable

7    attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in

8    which the complainant has substantially prevailed.'" <u>Poulsen v. Dep't of Defense</u>, 994

9    F.3d 1046, 1050 (9th Cir. 2021) (quoting 5 U.S.C. § 552(a)(4)(E)(i)).  A FOIA plaintiff

10   requesting an award of attorney fees "must show that it is both eligible for, and entitled to,

11   such fees."  <u>See</u> <u>Hiken v. Dep't of Defense</u>, 836 F.3d 1037, 1043 (9th Cir. 2016).

12        Here, however, prior to determining EcoRights' eligibility and entitlement to a fee

13   award, the Court addresses NMFS's argument that EcoRights' failed to exhaust its

14   administrative remedies as to NMFS, such exhaustion, NMFS asserts and EcoRights

15   does not dispute, being a prerequisite to an award of attorneys' fees in FOIA actions.[7]

16        **A.  Administrative Exhaustion**

17        A FOIA requester may "challenge the adequacy of [an agency's] response in court

18   if [it] is dissatisfied, but [it] must first exhaust available administrative remedies, including

19   an appeal within the agency."  <u>See</u> <u>Corbett v. Transp. Sec. Admin.</u>, 116 F.4th 1024, 1025

20   (9th Cir. 2024) (internal quotation and citation omitted).  Where an agency has failed to

21   render a determination within the statutory time limit,[8] however, such requester is

22   "deemed to have exhausted [its] administrative remedies."  <u>See</u> 5 U.S.C.

23   § 552(a)(6)(C)(i).  Nevertheless, if the requester waits to sue until after the agency has

24

25        [7] "USACE does not contest eligibility to fees—as to USACE."  (<u>See</u> Opp. at 10

26   n.2).

27        [8] Agencies must "determine within 20 [working] days . . . whether to comply" with a
     FOIA request, <u>see</u> 5 U.S.C. § 552(a)(6)(A)(i), or within thirty working days "[i]n unusual

28   circumstances," see 5 U.S.C. § 552(a)(6)(B)(i).

United States District Court
Northern District of California

1  responded, such requester is, once again, "required to pursue [its] administrative

2  remedies."  See Aguirre v. U.S. Nuclear Reg. Comm'n, 11 F.4th 719, 725 (9th Cir. 2021).

3      For an agency response to a FOIA request to constitute a "determination" so as to

4  "trigger the administrative exhaustion requirement, the agency must at least: (i) gather

5  and review the documents; (ii) determine and communicate the scope of the documents it

6  intends to produce and withhold, and the reasons for withholding any documents; and

7  (iii) inform the requester that it can appeal whatever portion of the 'determination' is

8  adverse."  See Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d

9  180, 188 (D.C. Cir. 2013) (hereinafter, "CREW").[9]

10     Here, NMFS issued its responses to EcoRights' FOIA requests prior to October

11  17, 2023, the date on which the instant action was filed.  Consequently, if NMFS's

12  responses constitute "determinations," EcoRights had an obligation to exhaust its

13  administrative remedies.

14     As set forth in detail above, NMFS's responses informed EcoRights of which

15  documents it intended to produce, which documents it would withhold, and which

16  documents it would refer to USACE.  Additionally, each such response stated that NMFS

17  would take no further action regarding the FOIA requests to which it was responding.

18     Notwithstanding NMFS's statement that it was taking no further action as to the

19  requested records, EcoRights contends the responses were not "determinations"

20  because, as to the records NMFS identified as originating with USACE and referred to

21

22     [9] The Ninth Circuit has not had occasion to determine what responses constitute
   "valid 'determinations' for purposes of re-triggering the exhaustion requirement."  See

23  Aguirre, 11 F.4th at 726 n.1.  Courts across the country, however, have given
   "appropriate deference" to the decisions of the District of Columbia courts, given their

24  substantial expertise in FOIA matters.  See, e.g., Our Children's Earth Found. v. U.S.
   Env't Prot. Agency, No. C 08–01461 SBA, 2008 WL 3181583, at *6 (N.D. Cal. Aug. 4,

25  2008); Knight First Amend. Inst. at Columbia Univ. v. U.S. Customs & Immigr. Servs., 30
   F.4th 318, 324 n.4 (2d Cir. 2022) (recognizing the Second Circuit has "frequently noted

26  the District of Columbia Circuit's 'particular FOIA expertise' and looked to its decisions for
   guidance in interpreting the FOIA").  Accordingly, this Court, like others in this District,

27  see, e.g., Ctr. for Investigative Reporting v. U.S. Dep't of Just., No. 21-cv-09613-SK,
   2022 WL 19915778, at *2 (N.D. Cal. May 19, 2022), uses the CREW framework in

28  deciding whether a response suffices to require exhaustion of administrative remedies.

United States District Court
Northern District of California

1    USACE, NMFS "did not determine and communicate the documents [it] intend[ed] to

2    produce and withhold, and the reasons for [any] withholding."  (See Mot. at 6:9-16)

3    (internal quotation and citation omitted).  According to EcoRights, it was not until

4    December 30, 2023, when USACE decided to release all of the records referred to it by

5    NMFS, that a "determination" was actually made as to EcoRights' requests.

6         In support thereof, EcoRights points to authority holding that when an agency

7    refers a document request to another agency the onus of FOIA compliance remains with

8    the agency that received the initial FOIA request.  See Keys v. Dep't of Homeland Sec.,

9    570 F. Supp. 2d 59, 70 (D.D.C. 2008) (holding agency receiving FOIA request "not

10   absolved of its obligations under FOIA when it refers the documents elsewhere").

11   NMFS's liability for USACE's failure to itself act with regard to the referred records does

12   not, however, mean NMFS has failed to issue a "determination."  Rather, such failure

13   constitutes a withholding (see Compl. ¶ 57) (alleging NMFS and USACE "are

14   constructively withholding" referred records), and, depending on the length thereof,

15   NMFS may be deemed to have improperly withheld the documents it referred to USACE,

16   see McGehee v. CIA, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (finding referral may amount

17   to "withholding" where it "significantly . . . increase[s] the amount of time [requester] must

18   wait").

19        Regardless of which agency ultimately is liable for the withholding, however, it is

20   clear that at the time EcoRights filed suit, NMFS had produced all the records it expressly

21   stated it would produce and that the referred records were being withheld.[10]  In other

22   words, at the time the instant action was filed, all records were accounted for as either

23   produced or withheld, and, consequently, the Court finds NMFS's determination letters

24   contained "adequate specificity, such that any withholding [could] be appealed

25

26   _____

27        [10] FOIA requires records not withheld to be made "promptly available to any
     person."  See 5 U.S.C. § 522(a)(3)(A).  The D.C. Circuit has interpreted this language to
     require production, depending on the circumstances, "within days or a few weeks of a
28   determination."  See CREW, 711 F.3d at 188.

United States District Court
Northern District of California

1    administratively."  See CREW, 711 F.3d at 189 (citing 5 U.S.C. § 552(a)(6)(A)(i)).

2          EcoRights next contends any such appeal would have been futile, and, thus, that

3    the exhaustion requirement should be waived.  The Court disagrees.

4          If EcoRights had filed an administrative appeal, NMFS could have decided it did

5    "not want to wait for another agency to act," a decision EcoRights argues should have

6    been made at the outset (see Reply at 3:24-26), and, given such revised position, NMFS

7    could have produced the requested records itself even though agencies "should typically

8    refer . . . record[s] to the component or originating agency for direct response," see 15

9    C.F.R. § 4.5(b).  Because EcoRights failed to exercise its appeal rights and sued,

10   however, NMFS was not provided the opportunity to reconsider its decision or to build a

11   factual record relevant to the manner in which both NMFS and USACE handled the

12   requests.  See Joint Bd. of Control of Flathead, Mission & Jocko Irr. Dists., 862 F.2d 195,

13   200 (9th Cir. 1988) (finding "exhaustion rule allows an administrative agency to develop a

14   complete factual record, to apply its expertise and discretion, and possibly to resolve the

15   conflict without judicial intervention").

16         In sum, because EcoRights did not exhaust its administrative remedies as to

17   NMFS, it is not eligible for an award of attorneys' fees as against NMFS.

18         **B.  Prevailing Party**

19         Even if EcoRights' failure to exhaust its administrative remedies were not a bar to

20   its eligibility for a fees award against NMFS, EcoRights is not eligible for an award of fees

21   because, as defendants argue, it has not substantially prevailed on its claims against

22   NMFS. See Long v. U.S. Internal Revenue Serv., 932 F.2d 1309, 1313 (9th Cir. 1991)

23   (holding "[a] complainant in a FOIA action is deemed to be eligible for fees if [it] has

24   'substantially prevailed' on [its] claim").  In response, EcoRights relies on the "catalyst

25   theory."  To succeed under the catalyst theory, "a plaintiff must demonstrate a voluntary

26   or unilateral change in position by the agency, if [plaintiff's] claim is not insubstantial."

27   See Poulsen v. Dep't of Defense, 994 F.3d 1046, 1051-52 (9th Cir. 2021) (internal

28   quotation and citation omitted).

United States District Court
Northern District of California

In that regard, EcoRights first argues the lawsuit caused the production of an "index of metadata" from NMFS. (See Reply at 5:3-11). Such index, however, was not what EcoRights asked for in its FOIA requests but, rather, was provided as a courtesy.

EcoRights further argues NMFS produced additional records after being sent the conferral letter. (See Wilcox Reply Decl. ¶¶ 6-8). There has been no showing, however, that those records would not have been produced absent the lawsuit. In particular, NMFS had been working cooperatively with EcoRights before the filing of the lawsuit, it continued to do so during the lawsuit, and the production on which EcoRights relies did not represent a change in any position taken by NMFS. Moreover, there has not been a showing that NMFS was even the party that produced the records. To the extent EcoRights argues USACE's production of records impliedly originating with NMFS constitutes a production by NMFS, there is no indication that the release was in fact authorized by NMFS. Indeed, USACE has not hesitated to release records originating with NMFS irrespective of NMFS's determination to the contrary. (See Martin Decl. ¶ 7) (describing eight records NMFS found non-responsive and that USACE nevertheless decided to produce).

The Court next turns to the question of whether EcoRights is entitled to an award of fees against USACE.

## C. Entitlement to Fees

Once a FOIA plaintiff is found eligible for attorneys' fees, "the district court has discretion to determine whether the plaintiff is entitled to fees." See Oregon Nat. Desert Ass'n v. Locke, 572 F.3d 610, 614 (9th Cir. 2009). "In exercising such discretion, the district court must consider: (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." Hiken, 836 F.3d at 1044 (internal quotation and citation omitted).

**1. Public Benefit**

The public benefit factor draws "a distinction . . . between [a] plaintiff who seeks to advance his private commercial interests and . . . [a] public interest group seeking information to further a project benefiting the general public." See Davy v. CIA, 550 F.3d 1155, 1158 (D.C. Cir. 2008).  In weighing this factor, courts consider "the public benefit derived from the case," including "both the effect of the litigation . . . and the potential public value of the information sought."  See id. at 1159.

Here, EcoRights points out that it "sought records that would shed light on . . . whether [defendants] are complying with their ESA [Endangered Species Act] duties to ensure [USACE]-managed dams are not jeopardizing ESA-listed species and their habitat" (see Mot. at 12:16-18), which information would serve to provide insight into matters of public concern.

Accordingly, the first factor weighs in favor of an award of fees.

**2. Commercial Benefit and Nature of Plaintiff's Interest**

Courts consider the second and third factors together to determine "whether the plaintiff had a sufficient private incentive to pursue his FOIA request even without the prospect of obtaining attorneys' fees."  See McKinley v. Fed. Hous. Fin. Agency, 739 F.3d 707, 712 (D.C. Cir. 2014) (internal quotation and citation omitted).  Where "a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate."  See Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  Where a plaintiff is "a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information."  See Church of Scientology of Cal. v. U.S. Postal Serv., 700 F.2d 486, 494 (9th Cir. 1983).

Here, EcoRights, a non-profit, public benefit corporation, sought disclosure of information relevant to a matter of public concern rather than a matter of private interest or private benefit.

Accordingly, the second and third factors weigh in favor of an award of fees.

### 3. Reasonable Basis for Withholding

"The fourth factor is 'whether the government's withholding had a reasonable basis in law'; in other words, whether the government's actions appeared to have 'a colorable basis in law' or instead appeared to be carried out 'merely to avoid embarrassment or to frustrate the requester.'"  See Ecological Rights Found. v. Fed. Emergency Mgmt. Agency, 365 F. Supp. 3d 993, 1001 (N.D. Cal. June 14, 2018) quoting Church of Scientology, 700 F.2d at 492 n.6.  The burden is on the agency to show "it had any colorable or reasonable basis for not disclosing the material."  See Davy, 550 F.3d at 1163.

Here, EcoRights argues the fourth factor weighs in its favor because USACE had no reasonable basis for failing to produce the responsive records in the requested format or for its delay in responding to the requests.  (See Mot. at 13:22-14:4).

In opposition, USACE points to its typical practice of collecting and processing FOIA records as PDF files rather than in native format.  (See Opp. at 17:8-11).  FOIA makes clear, however, that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format," see 5 U.S.C. § 552(a)(3)(B), and USACE has not made any showing that the records were not "readily reproducible" in the requested format.[11]

As to its delay in responding to the requests, USACE argues its response was "driven by resource constraints, not agency recalcitrance."  (See Opp. at 16:19-20).  Courts have found, however, that "administrative delay and FOIA backlog do not form a reasonable basis in law for withholding documents."  See Urban Air Initiative, Inc. v. Environmental Protection Agency, 442 F. Supp. 3d 301, 319-20 (D.D.C. 2020) (internal quotation and citation omitted) (collecting cases and holding fourth factor "weighs slightly in favor of plaintiffs" where "only reason provided for delay was lack of resources").  The

---

[11] By contrast, NMFS submitted evidence that the records requested from NMFS are not "readily reproducible" in native format.  (See Martin Decl. ¶¶ 12-13).

United States District Court
Northern District of California

cases on which USACE relies do not hold to the contrary but, rather, stand only for the proposition that an administrative delay on its own is not sufficient to support an award of fees.  See, e.g., Castillo v. United States Customs, No. 23-cv-03110-RS, 2024 WL 1182865, at *4 (N.D. Cal. Mar. 19, 2024) (finding, where plaintiff's FOIA request "[did] not implicate any significant public interests, and the public [could not] be said to have derived any benefit from [the] case," defendant's failure "to comply strictly with the statutory timing requirements [was] insufficient to support a fee award").

Accordingly, USACE having failed to carry its burden of showing it had a reasonable basis for its untimely production and failure to produce in the requested format, the Court finds the fourth factor weighs in favor of an award of fees.

### 4.  Balance of Factors

The "four factors are not equally weighted—they each involve a sliding scale, allowing one or more factors to outweigh the others."  See Schoenberg v. Fed. Bureau of Investigation, 2 F.4th 1270, 1278 (9th Cir. 2021).  Because the factors are "rather amorphous," see Morley v. Central Intelligence Agency, 894 F.3d 389, 390 (D.C. Cir. 2018), district courts are provided "very broad" discretion in balancing the factors when they "point in different directions."  See Schoenberg, 2 F.4th at 1278.

Here, defendants argue, the fourth factor tips the balance in favor of denying fees even though the other three factors favor an award of fees.  (See Opp at 14:15-21); see also, e.g., Schoenberg, 2 F.4th at 1277-78 (holding "district court acted within its discretion to deny [plaintiff] fees" even though "the first three factors favored fees and only the fourth disfavored fees").  As explained above, however, the fourth factor does not weigh against an award here, as USACE has not proffered a reasonable basis in law for either its decision to produce records in PDF format or for its delayed response.

In sum, all four factors weigh in favor of an award of fees, and, consequently, the balance of factors weighs in favor of granting an award of fees and costs against USACE.  The Court next turns to a determination of the appropriate size of such award.  See Long v. U.S. Internal Revenue Serv., 932 F.2d 1309, 1314 (9th Cir. 1991) (holding "once the

United States District Court
Northern District of California

court has determined that the plaintiff is both eligible for and entitled to recover fees, the award must be given and the only room for discretion concerns the reasonableness of the amount requested").

### D.  Amount of Award

EcoRights seeks an award of fees in the amount of $166,840.20 and an award of costs in the amount of $1,122.62.  (See Sproul Reply Decl. ¶ 5).

"The customary method for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a reasonable hourly rate." Hiken, 836 F.3d at 1044 (internal quotation and citation omitted).  In light thereof, a plaintiff seeking an award of fees "must submit [such plaintiff's] bill to the court for its scrutiny" as to the reasonableness of both the hourly rate and the number of hours expended.  See Long, 932 F.2d at 1313-14. That being said, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and, consequently, "trial courts need not, and indeed should not, become green-eyeshade accountants." See Fox v. Vice, 563 U.S. 826, 838 (2011).

The Court begins with its analysis of the reasonableness of the claimed hourly rates.

### 1.  Hourly Rates

"To determine a reasonable hourly rate, the district court should consider: [the] experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." Hiken, 836 F.3d at 1044 (internal quotation and citation omitted).  "The reasonable rate should generally be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Id. (internal quotation and citation omitted).  For purposes of determining a reasonable hourly rate the relevant community is "the forum in which the district court sits." See Camacho v. Bridgeport Fin., 523 F.3d 973, 979 (9th Cir. 2008).

14

1     Fee applicants "have the burden of producing evidence that their requested fees

2   are in line with those prevailing in the community for similar services by lawyers of

3   reasonably comparable skill, experience and reputation." See Vargas v. Howell, 949

4   F.3d 1188, 1199 (9th Cir. 2020) (internal quotation and citation omitted).  "Affidavits of the

5   plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and

6   rate determinations in other cases, particularly those setting a rate for the plaintiffs'

7   attorney, are satisfactory evidence of the prevailing market rate," United Steelworkers of

8   Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990), and "[t]he defendant may

9   introduce rebuttal evidence in support of a lower hourly rate," see Sorenson v. Mink, 239

10  F.3d 1140, 1145 (9th Cir. 2001).  "[T]he proper scope of comparison . . . extends to all

11  attorneys in the relevant community engaged in equally complex [f]ederal litigation, no

12  matter the subject matter."  See Prison Legal News v. Schwarzenegger, 608 F.3d 446,

13  455 (9th Cir. 2010).

14     Here, EcoRights seeks an award of fees for the work performed throughout the

15  case by attorneys Christopher Sproul ("Sproul") and Stuart Wilcox ("Wilcox"), the former

16  being a "senior lawyer" at Environmental Advocates (see Declaration of Christopher

17  Sproul in Support of Motion for Attorneys' Fees and Costs (hereinafter, "Sproul Decl.")

18  ¶ 3) with "39 years of experience" (see Sproul Decl. ¶ 18), essentially all in the fields of

19  environmental law and government transparency law (see Sproul Decl. ¶ 7), and the

20  latter being "Of Counsel" at Environmental Advocates (see Wilcox Decl. ¶ 3) with "13

21  years of experience" (see Sproul Decl. ¶ 27), the last six of which working on "a variety of

22  actions challenging federal agency, municipality, state agency, and private actors' actions

23  under FOIA and various environmental statutes" (see Wilcox Decl. ¶¶ 5, 7).

24     EcoRights claims hourly rates for Sproul in the amount of $995.00 for work

25  performed in 2023 and $1,065.00 for work performed in 2024 and 2025.  (See Sproul

26  Reply Decl. Ex. 1)  EcoRights claims hourly rates for Wilcox in the amount of $800.00 for

27  work performed in 2023 and $860.00 for work performed in 2024 and 2025; additionally,

28  with regard to work "bill[ed] at paralegal rates" (see, e.g., Wilcox Reply Decl. Ex. 1 at 2),

EcoRights claims for Wilcox an hourly rate of $285.00 for work performed in 2023 and $305.00 for work performed in 2024 and 2025.  (See Wilcox Reply Decl. Ex. 1).

In support of said rates, Sproul cites, inter alia, three environmental law cases from the Central District of California where his rates of $950.00 for work in 2022, $995.00 for work in 2023, and $1,055.00 for work in 2024 were found reasonable, and Wilcox's rates of $675.00 for work in 2022, $775 for work in 2023, and $825 for work in 2024 were found reasonable.  (See Sproul Decl. ¶ 19).  To the extent some of those rates were less than those requested here, Sproul explains that rates in the San Francisco Bay Area are higher than those in Los Angeles (see Sproul Decl. ¶ 19) and that inflation has driven up attorneys' billable rates over time (see Sproul Decl. ¶ 20) (citing U.S. Bureau of Labor Statistics).

The Court finds such showing constitutes satisfactory evidence of the prevailing rates in the relevant market for counsel of both attorneys' experience for the years in question in the field of environmental law.

Defendants, in an effort to rebut EcoRights' evidence, cite two FOIA cases, neither in the field of environmental law, and awarding, respectively, $700.00 per hour for work performed by a partner of unspecified years of experience in the Northern District of California in 2018 and 2019 and $350.00 per hour for work performed by an attorney of unspecified experience in the Central District of California in 2018, 2019, and 2020.  In the instant case, by contrast, the FOIA action constitutes a component of the field in which Sproul and Wilcox specialize, namely environmental law.  Moreover, the $700.00 hourly rate awarded in the first of the above two referenced cases is, after adjusting for inflation, commensurate with an hourly rate of about $951.52 in 2025 (see Wilcox Reply Decl. ¶ 9), and the $350.00 hourly rate found reasonable in the second of those two cases was the attorney's requested usual rate, see Schoenberg v. F.B.I., No. 18-cv-01738, 2020 WL 4937813, at *16 (C.D. Cal. May 8, 2020).

Defendants also contend the Court should reduce the above-referenced hourly rates when charged for performing tasks defendants characterize as "non-complex."

1  (See Opp. at 21:28).  Defendants do not, however, cite to any case, nor could the Court

2  locate one, wherein an attorney was required to adjust his/her rates based on the

3  complexity of the particular task performed.  Indeed, as the Ninth Circuit has observed,

4  "[p]rivate practitioners do not generally charge varying rates for the different lawyerly

5  tasks they undertake on a given case."  See Davis v. City and Cnty. of San Francisco,

6  976 F.2d 1536, 1548 (9th Cir. 1992).

7      Accordingly, the Court finds the rates sought by Sproul and Wilcox for all work

8  performed are reasonable.

9      **2.  Hours Expended**

10     "The party seeking fees bears the burden of documenting the hours expended in

11  the litigation and must submit evidence supporting those hours."  Welch v. Metropolitan

12  Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007).  Counsel is not "required to record in

13  great detail how each minute . . . was expended" but at least "should identify the general

14  subject matter of [the] time expenditures," see Hensley v. Eckerhart, 461 U.S. 424, 437

15  n.12 (1983), and "[w]here the documentation of hours is inadequate, the district court

16  may reduce the award accordingly," id. at 433.

17     "The party opposing the fee application has a burden of rebuttal that requires

18  submission of evidence to the district court challenging the accuracy and reasonableness

19  of the hours charged or the facts asserted by the prevailing party in its submitted

20  affidavits," Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992), and "must

21  specifically identify defects or deficiencies in the hours requested."  Cotton v. City of

22  Eureka, Cal., 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012) (holding "[c]onclusory and

23  unsubstantiated objections are insufficient to warrant a reduction in fees").  Even where

24  the opposing party fails to do so, however, the Court may not "accept[ ] uncritically [the

25  moving party's] representations concerning the time expended."  See Sealy, Inc. v. Easy

26  Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984).

27     Here, defendants, without identifying any particular billing entries they assert are

28  unreasonable, argue the Court should deny as incompensable, or reduce as excessive,

United States District Court
Northern District of California

1   fees and costs relating to (1) "the preparation, filing, and service of a straightforward

2   FOIA complaint" (<u>see</u> Opp. at 21:9-10), (2) "clerical tasks like preparing documents for

3   service, filing proofs of service, and checking status of service" (<u>see</u> Opp. at 21:21-22),

4   (3) "routine litigation tasks such as reviewing and filing form stipulations and preparing

5   simple joint case management statements" (<u>see</u> Opp. at 21:25-27), (4) "document

6   review" (<u>see</u> Opp. at 22:5), (5) "format negotiations" (<u>see</u> Opp. at 23:18), (6) "fees-on-

7   fees" (<u>see</u> Opp. at 24:2-24), (7) "redundant billing" (<u>see</u> Opp at 23:25-27) and

8   (8) prosecuting claims against NMFS (<u>see, e.g.</u>, Opp. at 23:17-18). The Court addresses

9   each category in turn.

10          **a.  Preparation and Service of Complaint**

11          EcoRights billed $7,714.00 for 9.9 hours expended in the preparation of the

12   complaint.[12]  Defendants contend such time is "excessive, especially, for experienced

13   counsel who routinely file very similar, formulaic FOIA complaints."  (See Opp. at 21:10-

14   12).  Courts, however, have "awarded around ten hours for the preparation of most

15   vanilla FOIA complaints."  See <u>Colorado Wild Public Lands v. U.S. Forest Serv.</u>, No. 21-

16   cv-2802 (CRC), 2025 WL 2406340, at *6 (D.D.C. Mar. 21, 2025).  Although, as

17   defendants point out, EcoRights, in drafting the Complaint, used sections of complaints it

18   had filed in other actions, the usefulness of prior pleadings, as EcoRights notes, "does

19   not excuse [its] counsel from ensuring that they accurately present the facts and make

20   only meritorious legal arguments."  (See Reply at 12:18-20).

21          Accordingly, fees relating to this category of services will not be reduced.

22          **b.  Clerical Tasks**

23          Defendants challenge $1228.00 billed for 3.3 hours expended on what defendants

24   characterize as "clerical tasks."  (<u>See</u> Opp. at 21:21-22).  Clerical tasks should be

25   "subsumed in firm overhead rather than billed at paralegal rates."  See <u>Nadarajah v.</u>

26

27          _____

          [12] The Court addresses the hours billed serving the Complaint in a subsequent
28   section herein.

Holder, 569 F.3d 906, 921 (9th Cir. 2009).  "[T]asks such as filing documents on ECF, revising and preparing documents referred to in time records as 'filings,' email exchanges between attorneys, and organizing certain files in anticipation of preparing a motion are not clerical tasks."  Am. C.L. Union Immigrants' Right Projects v. U.S. Immigr. & Customs Enf't, No. 16-cv-06066-JSC, 2018 WL 488997, at *5 (N.D. Cal. Jan. 19, 2018).  On the other hand, tasks such as "printing documents, downloading documents, collating files, calendaring items, booking travel, communications with the Court, and reviewing ministerial court notices are clerical in nature."  See Andrade v. Gaurino, No. 16-00347 JAO-WRP, 2019 WL 12520114, at *6 (D. Haw. Sept. 17, 2019).

Although the Court does not find the tasks identified by defendants qualify as "clerical," the Court has identified 2.6 other hours that do so qualify.  In particular, Wilcox spent 0.1 hours billed at $800.00 per hour "calendaring dates," 1.8 hours billed at $860.00 on clerical tasks such as "revis[ing] calendar dates," and 0.7 hours billed at $305.00 per hour "resolv[ing]" a "file formatting issue."  (See Wilcox Reply Decl. Ex 1 at 2, 4-5, 9-10, 12, 16-17, 20)[13]

Accordingly, the above-listed fees, totaling $1,841.50, will not be awarded.

### c.  Reviewing and Filing Stipulations and Preparing Case Management Statements

Defendants contend the $11,519.50 billed for 13.3 hours expended in performing tasks relating to "case management issues, . . . such as reviewing and filing form stipulations and preparing simple joint case management statements" are excessive. (See Opp. at 21:25-28).  In challenging the number of hours expended in this category of services, however, defendants have not pointed to any particular entries, nor has the Court identified any such hours other than the above-referenced 2.6 hours that have already been deducted.

---

[13] The above-referenced hours were expended on 10/19/23, 1/20/24, 1/26/24, 4/17/24, 5/9/24, 5/13/24, 5/14/24, 7/5/24, 7/24/24, 7/26/24, 8/4/24, 11/9/24, 1/10/25, and 1/23/25.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Accordingly, fees relating to this category of services will not be further reduced.

2    **d.  Document Review**

3    Defendants contend the Court should reduce the $9,288.00 billed for 10.8 hours

4    expended in document review, for the reason that, according to defendants: (1) fees for

5    document review are "unrecoverable under FOIA," (2) plaintiff's attorneys "did a

6    substandard job in the document review," and (3) utilizing an attorney with "13 years of

7    legal experience . . . for a simple review" is unreasonable.  (See Opp. at 22:5-23:8).  As

8    explained below, the Court is not persuaded.

9    First, fees incurred performing limited review of documents to determine

10    whether "production ends the litigation or if there are still compliance issues that

11    necessitate further litigation" are recoverable.  See Am. C.L. Union Immigrants' Right

12    Projects v. U.S. Immigr. & Customs Enf't, No. 16-cv-06066-JSC, 2018 WL 488997, at *4

13    (N.D. Cal. Jan. 19, 2018); see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.,

14    811 F. Supp. 2d 216, 240 (D.D.C. 2011) (awarding fees for review of disclosure; noting "it

15    would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an

16    agency's disclosure for sufficiency and proper withholding").

17    Here, Wilcox "quickly scann[ed] the records for places where there were

18    redactions and/or references on the face of the records themselves to other records that

19    appeared to have not been produced" and "did not read the records for content."  (See

20    Wilcox Decl. ¶ 20).  In other words, "[t]his is not a case where a plaintiff filed a complaint

21    for documents under FOIA, the agency released the documents, and the plaintiff then

22    requested attorney's fees for its time reviewing the released documents."  See Elec. Priv.

23    Info. Ctr. v. FBI, 80 F. Supp. 3d 149, 160 (D.D.C. 2015).

24    Second, the Court finds unpersuasive defendants' contention that the award of

25    fees should be reduced because counsel assertedly did a "substandard job" in reviewing

26    the documents produced.  In assessing whether the production was satisfactory, Wilcox

27    billed 10.8 hours for reviewing over 4,700 of pages of documents to assess whether the

28    production was satisfactory.  (See Wilcox Decl. ¶ 41).  Although defendants argue 71 of

1    the 91 documents EcoRights then identified as "missing" were already included in

2    defendants' productions, EcoRights points out that its review resulted in the production of

3    "over 1,200 additional pages" and the correction of "problems with many other records"

4    (see Reply at 14:11-13; see also Wilcox Decl. ¶ 23) and that its decision to limit the

5    number of hours expended was made to "avoid incur[rence] of excessive fees" and

6    "allowed [d]efendants, who were more familiar with the records, to determine whether . . .

7    records were missing" (see Reply at 14:17-19).  The Court finds counsel for EcoRights

8    suitably straddled the line between efficiency and accuracy.

9        Further, to the extent defendants contend a more junior attorney should have been

10   assigned to such tasks, the Ninth Circuit has held that courts should "not attempt to

11   impose [their] own judgment regarding the best way to operate a law firm, nor to

12   determine if different staffing decisions might have led to different fee requests."  See

13   Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008).

14       Accordingly, fees relating to this category of service will not be reduced.

15       **e.  Formatting Negotiations**

16       Defendants challenge the "more than 15 hours" expended in formatting

17   negotiations[14] and argue "the requested fees for negotiations regarding the format of

18   USACE's release are grossly disproportionate to the results [EcoRights] obtained"

19   because EcoRights "already had all the substantive information, and it was simply

20   seeking additional native metadata."  (See Opp. at 23:15-21).  The requested additional

21   information was sought in EcoRights' initial requests; to the extent it was "readily

22   reproducible by the agency in that form or format," see 5 U.S.C. § 552(a)(3)(B), it should

23   have been timely provided in such format, and EcoRights is entitled to fees for the time it

24   was required to expend negotiating such production.

25       Accordingly, fees relating to this category of service will not be reduced.

26

27       ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [14] Defendants do not identify the particular hours nor do they ascribe a particular
28   sum to them.

### f. Fees on Fees

Plaintiffs seek fees in the amount of $116,612.20 for hours expended in fee litigation, i.e. those spent participating in negotiations, attending mediation, and prosecuting the instant motion.

Under FOIA, plaintiffs who substantially prevail may recover, as part of their reasonable fees and costs, fees incurred pursuing an award of fees. See Assembly of State of Cal v. U.S. Dep't of Commerce, No. Civ. S–91–990WBS/JFM, 1993 WL 188328, at *16-17 (E.D. Cal. May 28, 1993) ("review[ing] . . . the language and purpose of the fees provision under FOIA" and holding "an award for reasonable fees on fees is appropriate").

Defendants contend EcoRights' request for fees on fees is excessive in that such fees exceed by a considerable amount the fees incurred during the merits portion of the litigation. Where, as here, however, a case settles early in the litigation and/or before any motion practice, "the proportion of time spent on recovering attorneys' fees relative to the time spent on the merits is likely to be larger than it would be if the parties engaged in lengthy litigation." See Human Rts. Def. Ctr. v. Cnty. of Napa, No. 20-cv-01296-JCS, 2021 WL 1176640, at *14 (N.D. Cal. Mar 28, 2021).

Further, in challenging the amount of fees on fees sought, defendants have not pointed to any particular entries as being an excessive expenditure of time, and the Court, having reviewed the billing records, has not, with one exception, identified any such entries, the one exception being 0.7 hours billed at an hourly rate of $860.00, which results in a fee of $602.00 for the time Wilcox spent waiting for a case management conference to be called. (See Wilcox Reply Decl. Ex. 1 at 15). The case management calendar for that date was conducted via Zoom, and the time counsel spent waiting to be called could have been spent productively working on another matter. Indeed, one of the reasons the Court holds case management conferences remotely is to reduce the costs associated with counsel's traveling to the courthouse and having no other option than to sit in a courtroom and wait for one's case to be called.

1    Accordingly, $602.00 of the amount claimed for fees on fees will not be awarded,

2  and the Court will address any further reductions in a later section herein.

3        **g.  Redundant Billing**

4    Defendants, again without pointing to any specific time entries, contend there are

5  "multiple instances of redundant billing" by Sproul and Wilcox.  Having reviewed the

6  billing records, the Court has identified a single instance of what appears to be duplicate

7  billing, specifically two entries on May 9, 2024, each of one half-hour duration, each in the

8  amount of $532.50, and both described by Sproul as "[c]all with Stuart Wilcox to discuss

9  revisions to conferral letter and contents of joint case management statement due

10  tomorrow."  (See Sproul Reply Decl. Ex. 1 at 3).

11    Although the billing records also include separate billing entries by Sproul and

12  Wilcox for other telephone conferences in which they mutually engaged and for reading

13  the same letter or email, it is not unexpected that the two attorneys on the case would

14  need to converse with each other periodically about the case, see Rodriguez v. Barrita,

15  Inc., 53 F. Supp. 3d 1268, 1281-82 (N.D. Cal. 2014) (awarding fees to each attorney for

16  "time spent conferencing with one another"), nor is it unexpected that each of the two

17  attorneys on the case would review emails from opposing counsel.

18    Accordingly, the above-referenced duplicate fee in the amount of $532.50 will not

19  be awarded, and no other deductions will be made on the grounds of redundancy.

20        **h.  Time Spent on Issues Solely Relating to NMFS**

21    Because the Court has found EcoRights failed to exhaust its administrative

22  remedies as to NMFS and that, in any event, EcoRights is not a prevailing party as to

23  said defendant, the Court will disallow fees and/or costs for services pertaining

24  exclusively to EcoRights' claims against NMFS.  See Lambert v. Ackerley, 180 F.3d 997,

25  1012 (9th Cir. 1997) (holding "[p]arties are entitled to fees only for work related to issues

26  on which they prevail").

27    Here, with the exception of 1.3 hours billed at an effective hourly rate of $324.62

28

United States District Court
Northern District of California

and dedicated to effectuating service on NMFS (see Wilcox Reply Decl. Ex. 1 at 2-3),[15] the work performed on the merits portion of the case appears to have been directed at EcoRights' claims against both defendants jointly, such claims being, essentially, related and intertwined, see Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) (holding "district court should focus on whether the claims on which [p]laintiff did not prevail involve a common core of facts *or* are based on related legal theories") (internal quotation and citation omitted) (emphasis in original) and "[t]o the extent the claims are related, [EcoRights] should recover reasonable fees for prosecuting those claims," see id.

Next, as to "[f]ees for fee litigation," time spent litigating entitlement to fees "should be excluded to the extent that the applicant ultimately fails to prevail in such [fees] litigation." See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n.10 (1990). As the Supreme Court has explained, "[f]or example, if the Government's challenge to a requested rate . . . resulted in the court's . . . reducing the award . . . from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate." See id.

Here, as to EcoRights' initial brief in support of its motion for fees, the Court has identified $41,366.00, representing 48.1 hours of work performed by Wilcox at a rate of $860.00 per hour on tasks described as "[l]egal research for motion for attorney fees and cost motion," "[d]rafting motion for attorneys' fees and costs," and other broadly described tasks related to the preparation of said brief (see Wilcox Reply Decl. Ex. 1 at 13-14, 17-21),[16] as well as $1,709.00, representing 1.6 hours of work performed by Sproul at a rate of $1,065.00 per hour on similarly vaguely described tasks relating to such preparation.

---

[15] The above-referenced hours were expended on 10/24/23, 11/7/23, 11/29/23, 12/5/23, 12/11/23, 12/14/23, and 12/29/23.

[16] The above-referenced hours were expended on 8/8/24, 8/20/24, 8/21/24, 8/22/24, 8/23/24, 8/26/24, 9/19/24, 9/20/24, 9/23/24, 1/7/25, 1/9/25, 1/11/25, 1/13/25, 1/14/25, 1/15/25, 1/16/25, 1/17/25, 1/18/25, 1/19/25, 1/21/25, 1/22/25, and 1/23/25.

United States District Court
Northern District of California

1  (See Sproul Reply Decl. Ex. 1 at 4, 6).[17, 18]  Because the Court cannot discern what

2  topics were being researched or which portions of the initial brief were being drafted, it

3  cannot determine what portion of these tasks was dedicated to work pertaining to the

4  recovery of fees from NMFS.

5        As approximately one fifth of that brief pertains to NMFS-specific issues such as

6  eligibility, i.e., issues that are unrelated to EcoRights' successful arguments, the Court

7  will disallow one fifth of the above-referenced 49.7 hours.  See, e.g., Kopp v. United

8  States Secret Serv., No. 18-cv-04913-JCS, 2019 WL 2327933, at *7 (N.D. Cal. May 31,

9  2019) (finding reduction of fee award by one third constituted "reasonable approximation

10  of the extent to which [plaintiff] fail[ed] to prevail on his [fees] motion"); Wal-Mart Stores,

11  Inc. v. City of Turlock, 483 F. Supp. 2d 1023, 1042 (E.D. Cal. 2007) (awarding fees-on-

12  fees in amount approximating percentage of time dedicated to successful argument).

13  Such disallowance, constituting a reduction of Wilcox's time by 9.62 hours and a

14  reduction of Sproul's time by 0.32 hours, resulting in deductions of $8,273.20 and

15  $340.80, respectively, comes to a combined reduction of $8,614.00.

16        As to EcoRights' reply brief filed in support of its motion for fees, the Court has

17  identified $26,574, representing 30.9 hours of work performed by Wilcox between

18  February 20, 2025, and March 11, 2025, at a rate of $860.00 per hour on tasks described

19  as "[l]egal research for fee motion reply brief," "drafting fee motion reply," and other

20  similarly described tasks related to the preparation of the reply brief.  (See Wilcox Reply

21  Decl. Ex. 1 at 22-24).  The Court also has identified $319.50, representing 0.3 hours of

22  work performed by Sproul on February 20, 2025, at a rate of $1,065.00 per hour on

23  similarly vaguely described tasks relating to the preparation of the reply brief.  (See

24

25      [17] The above-referenced hours were expended on 8/26/24, 1/9/25, 1/14/25, and 1/17/25.

26
27      [18] The above hours do not include time spent preparing the declarations filed in support of the motion which attest predominately to the history of the case, the experience of counsel, and the prevailing market rates in the community, all of which would have been necessary were EcoRights only seeking fees against USACE.

28

United States District Court
Northern District of California

1    Sproul Reply Decl. Ex. 1).[19]  Because the Court cannot discern what topics were being

2    researched or which portions of the reply brief were being drafted, it cannot determine

3    what portion of these tasks was dedicated to work pertaining to recovery of fees from

4    NMFS.

5         As approximately one third of the reply brief pertains to NMFS-specific issues such

6    as exhaustion of administrative remedies and prevailing party status, i.e., issues that are

7    unrelated to EcoRights' successful arguments, the Court will disallow a third of the

8    above-referenced 31.2 hours.  Such disallowance, constituting a reduction of Wilcox's

9    time by 10.3 hours and a reduction of Sproul's time by 0.1 hours, resulting in deductions

10   of $8,858 and $106.50, respectively, comes to a combined a reduction of $8,964.50.

11        Accordingly, the above-listed fees, which total $18,000.50, will not be awarded.

12   **E.  Costs**

13        Defendants contend the Court should "proportionally reduce [EcoRights'] cost

14   demand of $1,122.62" to the extent "it is not eligible for or entitled to fees" from NMFS by

15   disallowing the "$262.74 in costs of service on NMFS" and a portion of the "$337.10 in

16   legal research costs."  (See Opp. at 25:2-10).  The Court, for the reasons explained

17   above, will not award the $262.74 in costs incurred in serving NMFS and will reduce by

18   one fifth, i.e., $67.42, the costs incurred performing legal research in connection with

19   EcoRights' initial brief in support of its fees motion.  (See Sproul Decl. Ex. 10 at 2).[20]

20        Accordingly, costs in the amount of $330.16 will not be awarded, leaving a costs

21   balance of $792.46.

22

23

24

25        [19] The above hours do not include time spent preparing the declarations filed in

26   support of the reply which attest predominately to the history of the case and the
     prevailing market rates in the community, all of which would have been necessary were

27   EcoRights only seeking fees against USACE.

28        [20] EcoRights does not seek costs in connection with its fees motion reply.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, EcoRights' Motion for Attorneys' Fees and Costs is hereby GRANTED IN PART and DENIED IN PART as follows:

1.  As against defendant USACE, the motion is hereby GRANTED IN PART, and EcoRights is awarded attorneys' fees in the amount of $145,863.70 and costs in the amount of $792.46 for a total award of $146,656.16.

2.  As against defendant NMFS, the motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 29, 2025

MAXINE M. CHESNEY
United States District Judge